ROBERT CHARLES SMITH II

2525 W Washington #236

Las Vegas, NV 89106

702-750-5310

Pro Se Plaintiff



## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT CHARLES SMITH II, | |
| Plaintiff, | Case No.: 2:25-cv-MMD-EJY |
| v. | |
| BRIDGECREST CREDIT COMPANY, LLC, | |
| ZANE'S INVESTIGATIONS, | |
| EVA G. (agent of Bridgecrest), | |
| MICHAEL GONZALES (Direct Corporate Counsel), | JURY TRIAL DEMANDED |
| John Does 1–10, (Individuals involved in the scheme) | |
| Defendants. | |

## AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

## JURISDICTION AND VENUE

1. Federal Question Jurisdiction: This Court has jurisdiction under 28 U.S.C. § 1331 because this action involves federal statutes, including:

- The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.;
- The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.;
- Additionally, claims implicate the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.) and RICO (18 U.S.C. § 1961 et seq.).

2. Supplemental Jurisdiction: The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

3. Diversity Jurisdiction: Plaintiff is a resident of Nevada, while Defendants are organized or conduct significant business in other states, satisfying diversity under 28 U.S.C. § 1332.

4. Personal Jurisdiction: Defendants have sufficient contacts with Nevada, having conducted business and committed wrongful acts in this District.

5. Venue: Venue is proper under 28 U.S.C. § 1391(b) since the wrongful acts occurred in this District.

## PARTIES

6. Plaintiff: Robert Charles Smith II is a natural person and consumer (as defined in 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c)), residing in Nevada.

7. Defendant Bridgecrest Credit Company, LLC: A foreign limited liability company that has falsely represented itself as a creditor without a valid assignment.

8. Defendant Zane's Investigations: A business entity engaged in repossession services that unlawfully repossessed Plaintiff's vehicle without proper notice, in violation of UCC Article 9 (Nevada UCC NRS 104.9611-9617).

9. Defendants Eva G. and Michael Gonzales: Acting on behalf of Bridgecrest, they engaged in fraudulent misrepresentations regarding the debt and its collection.

10. John Does 1–10: Unknown co-conspirators involved in the wrongful actions described herein.

## INTRODUCTION

11. Plaintiff brings this action against Defendants for breach of contract, fraudulent accounting, mail fraud, conversion, FDCPA violations, FCRA violations, and related common law and statutory claims arising from the unlawful repossession and subsequent sale of his 2010 Mercedes-Benz E350.

12. Plaintiff contends that Bridgecrest had no valid assignment or contractual authority to enforce the financing agreement and engaged in fraudulent practices to repossess and sell the vehicle.

13. As a result of these wrongful acts, Plaintiff has suffered severe financial, reputational, and personal harm, including damage to his credit, loss of income, and deprivation of personal and business property.

14. Plaintiff seeks damages in the total amount of $6,076,000, including actual, statutory, and punitive damages, along with injunctive and declaratory relief.

## STATEMENT OF FACTS

### A. The Financing Agreement and Lack of Assignment

15. On August 7, 2022, Plaintiff entered into a financing agreement for his 2010 Mercedes-Benz E350 with Carvana—not with Bridgecrest.

- Exhibit A: Original Contract demonstrates that Bridgecrest was never listed as a creditor or assignee.

16. Bridgecrest falsely asserted rights over the contract and engaged in fraudulent accounting by fabricating defaults and making improper balance adjustments.

- This conduct violates UCC § 9-406(a) (the debtor's right to refuse payment to an unverified assignee) and TILA requirements regarding the disclosure of the true creditor.
- Case Example: In U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40 (Mass. 2011), the court held that a party cannot enforce a loan without proving a valid assignment.

### B. Fraudulent Accounting and Credit Reporting Violations

17. Bridgecrest engaged in deceptive accounting practices by misrepresenting Plaintiff's account status and payment history. Specifically:

- Plaintiff's account payment history pertaining to the 2010 Mercedes Benz E350 provided by Bridgecrest showed two zero balances and credits of $81.31 and $146.79, yet Defendants continued to report a delinquent balance and initiated repossession actions.
- Despite these zero balances and credits from over payment Defendants failed to address them properly in prior disputes and falsely claimed Plaintiff was in default.
- Defendants' failure to acknowledge the credits further demonstrates their pattern of fraudulent accounting and misrepresentation.

18. Bridgecrest falsely reported derogatory marks on Plaintiff's credit report, causing a significant drop in his credit score. Their actions violated:

- FCRA (15 U.S.C. § 1681s-2) – Prohibiting the furnishing of inaccurate information.
- FDCPA (15 U.S.C. § 1692e(8)) – Prohibiting the communication of false credit information.

19. Plaintiff repeatedly disputed these inaccuracies (see Exhibit B: Dispute Letters and Exhibit C: CFPB Complaint & Responses), but Defendants failed to investigate or correct the errors, further violating the FCRA and FDCPA.

**C. The Unlawful Repossession**

20. On August 13, 2024, Zane's Investigations illegally repossessed Plaintiff's vehicle, relying on fraudulent documentation.

21. The repossession was conducted without a valid security interest under UCC 9-609 and without providing Plaintiff the requisite notice of his right to cure, as mandated by Nevada UCC NRS 104.9611.

- Case Example: Proctor v. GMAC Mortg., LLC, 2010 WL 3447708 (E.D. Mich. 2010) reinforces that repossession without proper legal authority constitutes conversion.

**D. The Fraudulent Sale and Unjust Enrichment**

22. On October 31, 2024, despite ongoing disputes, Defendants proceeded to sell Plaintiff's vehicle.

23. Plaintiff had submitted formal disputes and requests for debt validation (see Exhibit B: Dispute Letters and Exhibit C: CFPB Complaint &amp; Responses), which were ignored.

24. The fraudulent sale deprived Plaintiff of both his vehicle and personal business property stored within it.

- Case Example: In Mendoza v. JPMorgan Chase Bank, 6 Cal. App. 5th 802 (2016), wrongful repossession and sale were held as conversion when no valid security interest existed.

**E. Credit Reporting Fraud and Financial Harm**

25. Bridgecrest falsely reported negative information to credit bureaus, resulting in a decline of over 100 points in Plaintiff's credit score.

26. This misinformation led to higher interest rates, loan denials, and lost financial opportunities.

- Case Example: Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) establishes that willful reporting of false credit data results in significant harm and is actionable.

27. The failure to correct these errors further violates FCRA (15 U.S.C. § 1681s-2) and 15 U.S.C. § 1681i.

- Guimond v. Trans Union, 45 F.3d 1329 (9th Cir. 1995) supports the requirement for prompt and accurate reinvestigation of disputed information.

**LEGAL CLAIMS**

**Count 1 – Breach of Contract (Against Bridgecrest)**

28. Bridgecrest lacked any legal assignment or contractual authority to enforce the financing agreement.

29. By acting on a non-existent assignment, Bridgecrest breached the contract, causing Plaintiff substantial financial harm.

- Cited Authorities:
- UCC § 9-406(a)
- U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40 (Mass. 2011)
- Carpenter v. Longan, 83 U.S. (16 Wall.) 271 (1872)

**Count 2 – Fraud in Accounting (Against Bridgecrest & Eva G.)**

30. Defendants manipulated financial records by fabricating defaults, failing to acknowledge account credits properly, and misrepresenting the account balance.

31. The existence of $81.31 and $146.79 in credits contradicts Defendants' claims of delinquency and supports Plaintiff's assertion that Defendants engaged in deceptive accounting practices.

32. Plaintiff suffered financial damages due to reliance on these fraudulent representations, as they led to wrongful repossession and credit harm

- Cited Authorities:

- TILA (15 U.S.C. § 1638) – Requires clear and accurate account disclosures.
- Glazer v. Chase Home Fin. LLC, 704 F.3d 453 (6th Cir. 2013) – Addressing fraudulent loan servicing practices.
- Spokeo, Inc. v. Robins, 578 U.S. 330 (2016) – Holding that inaccurate financial reporting creates concrete harm.

33. Plaintiff suffered financial damages as a direct result of relying on these misrepresentations.

**Count 3 – Mail Fraud (Bridgecrest, Eva G, Michael Gonzales)**

34. Defendants engaged in a scheme to defraud by sending materially false and misleading debt collection notices through the mail.

- Cited Authorities:
- 18 U.S.C. § 1341
- Schmuck v. United States, 489 U.S. 705 (1989)
- United States v. Green, 745 F.2d 1205 (9th Cir. 1984)

**Count 4 – Conversion (Against All Defendants)**

35. Defendants unlawfully took possession of Plaintiff's vehicle and the personal/business property contained therein.

36. Their actions constitute conversion by depriving Plaintiff of his property without legal justification.

- Cited Authorities:
- Common Law Principles of Conversion
- Proctor v. GMAC Mortg., LLC, 2010 WL 3447708 (E.D. Mich. 2010)
- Mendoza v. JPMorgan Chase Bank, 6 Cal. App. 5th 802 (2016)

**Count 5 – FDCPA Violations (Against Bridgecrest & Zane's Investigations)**

37. Defendants engaged in deceptive, unfair, and abusive debt collection practices in violation of the FDCPA.

38. Their conduct, including the misrepresentation of debt information and failure to validate the debt, has directly harmed Plaintiff.

- Cited Authorities:
- 15 U.S.C. § 1692 et seq.
- Heintz v. Jenkins, 514 U.S. 291 (1995)
- Tourgeman v. Collins Fin. Servs., 755 F.3d 1109 (9th Cir. 2014)

**Count 6 – FCRA Violations (Against Bridgecrest)**

39. Bridgecrest knowingly furnished inaccurate credit information by failing to acknowledge Plaintiff's $81.31 and $146.79 credits and continuing to report a delinquent balance.

40. The failure to correct these errors despite Plaintiff's disputes constitutes a violation of the FCRA, causing harm to Plaintiff's creditworthiness.

- 41. Cited Authorities:
- Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) – Holding that willful misreporting of credit data is actionable.
- Guimond v. Trans Union, 45 F.3d 1329 (9th Cir. 1995) – Requiring prompt and accurate reinvestigation of disputed credit information.

42. Bridgecrest knowingly furnished inaccurate and incomplete information to credit reporting agencies, damaging Plaintiff's credit reputation.

43. The failure to promptly correct these inaccuracies constitutes a violation of the FCRA.

- Cited Authorities:
- 15 U.S.C. § 1681s-2 and § 1681i
- Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)
- Guimond v. Trans Union, 45 F.3d 1329 (9th Cir. 1995)

**Count 7 – RICO Violations (Against All Defendants)**

44. The Defendants' pattern of fraudulent actions—including the unlawful repossession, fraudulent accounting, and misrepresentations—constitutes a pattern of racketeering activity.

45. Their conduct is actionable under RICO, as it demonstrates a systematic pattern of fraud and deception.

- Cited Authorities:
- 18 U.S.C. § 1961 et seq.
- Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)
- United States v. Turkette, 452 U.S. 576 (1981)

**DAMAGES & RELIEF REQUESTED**

**A. Actual Damages**

Case # 2:25-cv-00004-MMD-EJY   Document 7-1   Filed 01/27/25 Page 8 of 11

- Loss of Wages & Business Opportunities: $50,000
- Loss of Personal & LLC Property: $20,000
- Pain and Suffering: $50,000
- Damage to Creditworthiness: $5,000 per month for 5 years = $300,000
- Subtotal: $420,000

**B. Statutory Damages**

- FDCPA Violations: $5,000
- FCRA Violations: $5,000
- Subtotal: $10,000

**C. Punitive Damages**

- Bridgecrest: $3,200,000
- Zane's Investigations: $700,000
- Eva G.: $700,000
- Michael Gonzales: $700,000
- John Does 1–10 (Collectively): $350,000
- Subtotal: $5,650,000

**D. Grand Total: $6,076,000**

**E. Injunctive and Declaratory Relief**

- An order requiring correction of Plaintiff's credit report and removal of all derogatory marks.
- A prohibition against further collection actions regarding the disputed debt.
- Any other relief deemed just and proper by the Court.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Date: February 9, 2025


Respectfully submitted,

Robert Charles Smith II

Pro Se Plaintiff


## MOTION FOR SUMMARY JUDGMENT


## INTRODUCTION


Plaintiff moves for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine dispute as to any material fact regarding key claims— including breach of contract, conversion, FDCPA, and FCRA violations.

## STATEMENT OF UNDISPUTED MATERIAL FACTS


### 1. Assignment and Contractual Authority:

- The financing agreement (see Exhibit A) clearly does not list Bridgecrest as a creditor or assignee.

### 2. Failure to Validate Debt:

- Plaintiff sent dispute letters (see Exhibit B) and filed complaints with the CFPB (see Exhibit C), which Bridgecrest ignored.


### 3. Unlawful Repossession and Sale:

- The repossession on August 13, 2024, and the subsequent sale on October 31, 2024, occurred without proper legal authority and notice.

Case # 2:25-cv-00004-MMD-EJY   Document 7-1   Filed 01/27/25 Page *10* of *11*

**4. Falsified Accounting and Credit Reporting:**

- Plaintiff's account payment history provided by Bridgecrest reflects a credit $81.31 on September 12, 2022 and a credit of $146.79 on November 30, 2022, contradicting Defendants' claim that Plaintiff was in default.
- Defendants ignored these credits and proceeded with negative reporting, violating FCRA (15 U.S.C. § 1681s-2).
- The attached exhibits confirm that Defendants failed to acknowledge zero balances and the credits of $81.31 and 146.79.
- Defendants manipulated payment records (see Exhibit D) and furnished inaccurate information to credit bureaus.

**LEGAL STANDARD**

Under Celotex Corp. v. Catrett, 477 U.S. 317 (1986), summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

**ARGUMENT**

**A. Breach of Contract and Conversion:**

- As established by U.S. Bank Nat'l Ass'n v. Ibanez and Carpenter v. Longan, without valid assignment, Bridgecrest's actions breach the contract and constitute conversion.

**B. FDCPA and FCRA Violations:**

- Defendants' deceptive collection practices and false credit reporting are supported by Heintz v. Jenkins, Tourgeman v. Collins Fin. Servs., Safeco Ins. Co. v. Burr, and Guimond v. Trans Union.

**C. Lack of Genuine Dispute:**

- The undisputed facts, supported by the attached exhibits, compel a judgment in Plaintiff's favor on these key claims.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant summary judgment on the following claims:

- Breach of Contract (Count 1),
- Fraud in Accounting (Count 2),
- Mail Fraud (Count 3)
- Conversion (Count 4),
- FDCPA Violations (Count 5), and
- FCRA Violations (Count 6).

Additionally, Plaintiff requests that the Court set a trial date for any remaining disputed issues and award the damages as detailed in the Amended Complaint.

February 9, 2025

Respectfully submitted,

_____

Robert Charles Smith II

Pro Se Plaintiff

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NAJ.docusign.net

# CONTRACT FOR SALE AND SECURITY AGREEMENT FOR SALE OF VEHICLE
## WITH PAYMENT OF SIMPLE INTEREST

| SECTION A | | CREDITOR   CARVANA, LLC |
|---|---|---|
| Buyer's Name(s)   Robert Charles Smith II | | Address  600 S 94th AVE |
| Name | | City TOLLESON                    County  N/A |
| Address 2200 W Bonanza Rd | | State AZ            Zip85353-2820   Phone  1-800-333-4554 |
| City   Las Vegas                County   N/A | | Stock No.2001908868 |
| State   NV                      Zip  89106-4714 | | Salesman N/A                             Date  08/07/2022 |
| Bus. Phone  N/A        Res. Phone  7027505310 | | |

| SECTION B | DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT |
|---|---|

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost you: | AMOUNT FINANCED The amount of credit provided to you or on your behalf: | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled: | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $  2,000.00 : |
|---|---|---|---|---|
| 25.366   % | $    15,684.98 | $    16,441.16 | $    32,126.14 | $    34,126.14 |

| Your Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| | 71 | $    447.00 | 09/07/22 |
| | 1 | $    389.14 | 08/07/28 |
| | N/A | $    N/A | N/A |

**Security:** You are giving a security interest in the goods or property being purchased.

☐ If checked, you are giving a security interest in _____ N/A _____

**Late Charge:** If a payment is more than 10 days late, you will be charged $15.00 or 8% of the payment, whichever is less.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.                    (e) means estimate.

## INSURANCE AND DEBT CANCELLATION

Credit life insurance, credit disability insurance and debt cancellation coverage, which is known as GAP Coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term |
|---|---|---|
| Credit Life | N/A | N/A |
| Joint Credit Life | N/A | N/A |
| Credit Disability | N/A | N/A |
| Credit Life and Disability | N/A | N/A |
| Joint Credit Life and Disability | N/A | N/A |
| Debt Cancellation Coverage (GAP Coverage) | N/A | N/A |

Signatures:

I want credit life insurance:  X _____ N/A _____

We want joint credit life insurance:  X _____ N/A _____
                                      X _____ N/A _____

I want credit disability insurance:  X _____ N/A _____

I want credit life and disability insurance:
                                      X _____ N/A _____

We want joint credit life and single disability insurance:
                                      X _____ N/A _____
                                      X _____ N/A _____

I want debt cancellation coverage (GAP Coverage):
                                      X _____ N/A _____

You may obtain property insurance from anyone you want that is acceptable to the Creditor on page 1 of 7. If you get the insurance from the Creditor, you will pay $ _____ N/A _____ and the term of the insurance will be _____ N/A _____ .

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services                                            RSSIMVLAZ-NV 10/1/2012
                                                                                    Page 1 of 7

Exhibit H
2

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| SECTION C | ITEMIZATION OF AMOUNT FINANCED |
| --- | --- |

1. Vehicle Selling Price     $   16,990.00
    Plus: Documentary Fee    $   N/A
    (This charge represents costs and profit to the dealer for
    items such as inspecting, cleaning, adjusting vehicles, and
    preparing documents related to the sale.)
    Plus: Emissions Inspection Fee   $   N/A
    Plus Other (   N/A   ) $   N/A
    Plus Other (   N/A   ) $   N/A
    Plus Other (   N/A   ) $   N/A
    Total Taxable Selling Price     $   16,990.00
2. Total Sales Tax     $   1,422.91
3. Amounts Paid to Public Officials
    a. Titling Fee     $   20.00
    b. Registration Fee     $   N/A
    c. Other   Title Processing Fee     $   8.25
    Total Official Fees     $   28.25
    (Add 3a through 3c)
4. Optional, nontaxable, fees or charges

| | | $ | |
| --- | --- | --- | --- |
| a. | N/A | $ | N/A |
| b. | N/A | $ | N/A |
| c. | N/A | $ | N/A |
| d. | N/A | $ | N/A |
| e. | N/A | $ | N/A |
| f. | N/A | $ | N/A |

    Total Optional, nontaxable, fees or charges   $   0.00
    (Add 4a through 4f)
5. TOTAL CASH SALES PRICE     $   18,441.16
6. Gross Trade-In Allowance     $   N/A

    N/A
Year    Make    Model    VIN
    Less Prior Credit or Lease Balance $   N/A
    Net Trade-In Allowance     $   N/A
    (If negative, enter 0 and see line 11a)

7. Down Payment (Other Than Net Trade-In Allowance):
    a. Trade-In Sales Tax Credit     $   N/A
    b. Cash     $   2,000.00
    c. Manufacturer's Rebate     $   N/A
    d. Deferred Down Payment     $   N/A
    e. Other (   N/A   )     $   N/A
    Down Payment (Add 7a through 7e)   $   2,000.00
8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE
    (Add 6 and 7)     $   2,000.00
9. UNPAID BALANCE OF CASH SALES PRICE
    (Subtract 8 from 5)     $   16,441.16
10. Plus Optional Insurance and Debt Cancellation Charges*
    a. Credit Life Insurance Premium
       Paid to (   N/A   )
       Term (   N/A   ) $   N/A
    b. Credit Disability Insurance Premium
       Paid to (   N/A   )
       Term (   N/A   ) $   N/A
    c. Debt Cancellation Coverage (GAP Coverage)
       Paid to (   N/A   )
       Term (   N/A   ) $   N/A
    d. Other Insurance
       Paid to (   N/A   )
       Term (   N/A   ) $   N/A
    Total Optional Insurance and Debt Cancellation Charges
    (Add 10a through 10d)     $   N/A
11. Other Amounts Financed*
    a. Prior Credit or Lease Balance   $   0.00
       Paid to (   N/A   )
    b. (   N/A   ) $   N/A
       Paid to (   N/A   )
    c. (   N/A   ) $   N/A
       Paid to (   N/A   )
    Total Other Amounts Financed     $   0.00
    (Add 11a through 11c)
12. TOTAL AMOUNT FINANCED     $   16,441.16
    (Add 9, 10 and 11)
    *Seller may retain or receive a portion of this amount.

| SECTION D | VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT |
| --- | --- |

This contract is made the   7   (day) of   8   (month) of   2022   (year), between you, the Buyer(s) shown on page 1 of 7, and us, the Seller shown as Creditor on page 1 of 7. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B on page 1 of 7), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used:   **Used**    Year and Make:   2010 Mercedes-Benz   Series:   E-Class   Body Style:   Sedan
No. of Cyl:   6    If truck, ton capacity:   N/A    Manufacturer's Serial Number:   WDDHF5GB6AA054779
Use for which purchased:   ☒ Personal    ☐ Business    ☐ Agriculture
INCLUDING:

| | | |
| --- | --- | --- |
| ☐ Sun/Moon Roof | ☒ Air-Conditioning | ☐ Automatic Transmission |
| ☒ Power Steering | ☒ Power Door Locks | ☒ Power Seats |
| ☒ Power Windows | ☒ Tilt Wheel | ☐ Vinyl Top |
| ☐ Cassette | ☒ Cruise Control | ☒ AM/FM Stereo |
| ☒ Compact Disc Player | | |

    Silver    Color   N/A     Tires   N/A     Lic. No.

You, severally and jointly, promise to pay to us the Total of Payments (shown in Section B) according to the Payment Schedule (also shown in Section B), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed on page 1 of 7.

Retail Installment Contract-NV Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services        RSSIMVLAZ-NV 10/1/2012
                                  Page 2 of 7

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NAA.docusign.net

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

| Address where Collateral will be located: | 2200 W Bonanza Rd | Las Vegas | N/A | NV |
|---|---|---|---|---|
| | Street | City | County | State |
| Your address after receipt of possession of Collateral: | 2200 W Bonanza Rd | Las Vegas | N/A | NV |
| | Street | City | County | State |

Notice of Rescission Rights (Option to Cancel)
If the Buyer signs here, the notice of rescission rights on page 6 of 7 is applicable to this contract.

Buyer's signature  N/A _____

Co-Buyer's signature  N/A _____

STATE DISCLOSURE REQUIREMENTS:  The provisions of Section B and Section C above are incorporated into this agreement for purposes of state disclosure requirements.

Additional Terms and Conditions: The additional terms and conditions set forth in this contract are a part of this contract and are incorporated herein by reference.

OPTION N/A _____  You pay no Finance Charge if the Total Amount Financed, Item No. 12, Section C, is paid in full on or before the
N/A _____ (day) of _____ N/A _____ (month) of _____ N/A _____ (year).

SELLER'S INITIALS: N/A _____

| SECTION E |
|---|

[X] If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

### NOTICE TO BUYER

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid indebtedness evidenced by this agreement.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*The text of the preceding two paragraphs is set forth below in Spanish:*
*Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo en la página 2 de 7, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.*

*LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.*

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems TM
Wolters Kluwer Financial Services

RSSIMVLAZ-NV 10-1-2012
Page 3 of 7

Exhibit A
4

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusing.net

**BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN PAPER COPY OF THIS CONTRACT AND THE DISCLOSURE ON PAGES 1 AND 2 OF 7 AT THE TIME OF SIGNING.**

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C.

Buyer: _Robert Smith_            Date: _08/07/2022_
DocuSigned by: 2DDDF67A52E84C0

Co-Buyer: _N/A_                 Date: _N/A_

Creditor: _Carvana, LLC_         Date: _08/07/2022_

By: _____      Title: _General Counsel_

[The rest of this page intentionally left blank.]

COPY VIEW

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RS  RSSIMVLAZ-NV 10-1-2012
Page 4 of 7

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## ADDITIONAL TERMS AND CONDITIONS (Simple Interest)

**SIMPLE INTEREST CONTRACT** - This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 7 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. You promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on page 1 of 7 of this contract.

**DEFAULT** - If you default in the performance of this agreement, because (1) you fail to make a payment later than 30 days past the date required by the agreement, or (2) the prospect of payment, performance or realization of collateral is significantly impaired (the burden of establishing the prospect of significant impairment is on the Seller), we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus), it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement, you agree to pay finance charges at the Annual Percentage Rate shown on page 1 of 7 until all sums owing us are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed, we may store personal property found in the vehicle for your account and at your expense and, if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

**DELINQUENCY AND COLLECTION CHARGES** - You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and reasonable collection costs to the extent not prohibited by law.

**DEMAND FOR FULL PAYMENT AND ADDITIONAL REMEDIES ON DEFAULT** - If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus), it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on page 2 of 7 is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**OWNERSHIP OF THE COLLATERAL** - You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for the one relating to this contract.

**LOCATION AND USE OF COLLATERAL** - You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not permanently take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means.

You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**INSPECTION OF THE COLLATERAL** - We may inspect the Collateral at any reasonable time.

**TAXES** - You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing, and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**PROPERTY INSURANCE** - You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described on page 5 of 7), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

**LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.**

**INFORMATION TO INSURANCE COMPANY OR AGENT** - You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND DEBT CANCELLATION COVERAGE (GAP COVERAGE)** - If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP Coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

**NO WARRANTIES** - **THE SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS THE SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER AS THE ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF THE SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, THE SELLER ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE.**

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

KS RSSIMVLAZ-NV 10/1/2012

Page 5 of 7

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**NOTICES** - Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required unless we have actual knowledge of a change in your address and, in that event, the notice will be reasonable if we send it to the changed address.

**TIME IS OF THE ESSENCE** - You understand that all payments that are required must be made on the day due.

**EXERCISING OUR RIGHTS** - We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).

**MEANING OF WORDS** - In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we", "us" and "ours" means the Creditor shown on page 1 of 7 in Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.

**GOVERNING LAW** - This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.

**INVALIDITY** - Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision is prohibited or invalid, the remaining provisions of this contract will continue to be valid.

**NOTICE OF RESCISSION RIGHTS (Option to Cancel)** - The provisions of this paragraph only apply if you have signed the Notice of Rescission Rights on page 3 of 7 of this contract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You acknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to deliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does business pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind the contract, the Seller shall, within 20 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given upon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in which actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, to restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately returned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the Seller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. (5) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the vehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs related to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

## ASSIGNMENT

Seller may transfer this contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The Seller may assign this contract electronically. Contact Assignee about this contract at ___N/A___

_____

| | |
|---|---|
| Seller signs: | N/A |
| By: | N/A |
| Title | N/A |

To induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the statements and amounts inserted herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services described in the contract, or both; (c) the down payment, if any be shown on page 2 of 7 of this contract, has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations of warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have been sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien on the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens and encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) Seller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power and authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive possession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; (l) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires under an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the Buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the facts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer is or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to believe the Buyer has ever violated any laws concerning liquor or narcotics.

In the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the contract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any costs or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all defenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other remedies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer with respect to the contract, services or the Collateral, if Buyer asserts as a defense, set off or counterclaim any act, omission or default by Seller, Seller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSIMVLAZ-NV 10:1 2012
Page 6 of 7

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

the heirs, representatives, successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. The above assignment provisions apply and are in addition to any obligations of Seller as provided in the paragraph below endorsed by Seller.

1. RECOURSE: Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any accrued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.

Seller: _____ N/A _____

By: _____ N/A _____

Title: _____ N/A _____ Date: _____ N/A _____

2. REPURCHASE: In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____ N/A _____

By: _____ N/A _____

Title: _____ N/A _____ Date: _____ N/A _____

3. LIMITED ENDORSEMENT: In the event of default of Buyer before Buyer shall have paid the first ___ N/A ___ installments under the foregoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____ N/A _____

By: _____ N/A _____

Title: _____ N/A _____ Date: _____ N/A _____

4. WITHOUT RECOURSE: This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: _____ N/A _____

By: _____ N/A _____

Title: _____ N/A _____ Date: _____ N/A _____

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems ™
Wolters Kluwer Financial Services

DS
KS  RSSIMVLAZ-NV 10/1/2012
Page 7 of 7

DocuSign Envelope ID: D8B435-2B27-46A0-BC38-8F159DB5B8B6

This is a certified copy of the record on file at NA3.docusign.

A - 8

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| Mercedes-Benz | E-Class | 2010 | WDDHF5GB6AA054779 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

☐ # IMPLIED WARRANTIES ONLY

The dealer doesn't make any promises to fix things that need repair when you buy the vehicle or afterward. But *implied warranties* under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☒ # DEALER WARRANTY

☐ FULL WARRANTY.

☒ LIMITED WARRANTY. The dealer will pay _100_ % of the labor and _100_ % of the parts for the covered systems that fail during the warranty period*. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.
*A $200 deductible will apply for each out-of-network repair visit; No deductible for in-network repairs.

**SYSTEMS COVERED:**

Frame and Body (Corrosion); Engine; Transmission & Drive Shaft; Differential; Cooling; Electrical; Fuel; Heating & Air Conditioning; Braking; Restraint; Steering; Suspension; Tires; Wheels; Exhaust

**DURATION:**

100 days or 4,189 miles, whichever comes first

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

☐ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☒ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

**ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.**

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE** for important additional information, including a list of major defects that may occur in used motor vehicles.

Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.

A - 9

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked of damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage
Catalytic Converter

DEALER NAME
        CARVANA, LLC
ADDRESS
        600 S 94th AVE                                         TOLLESON, AZ 85353-2820
TELEPHONE                                                      EMAIL
        1-(800)333-4554                                        DL-CarvanaPhoenixAdvocate@carvana.com
FOR COMPLAINTS AFTER SALE, CONTACT:
Carvana Customer Advocates at: 1.800.333.4554 or 1930 W Rio Salado Pkwy, Tempe, AZ 85281

**IMPORTANT:**  The information on this form is part of any contract to buy this vehicle.  Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).



# CREDIT REPORTING NOTICE

Thank you for being a Carvana customer. We know you have other choices and we appreciate you choosing us to assist you.

We report all information, positive and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. If you believe any information we have reported is inaccurate please notify us immediately in writing at the address below.

If you have any questions about any of our programs or your credit reporting, Please feel free to call us a 1, 235-9900 or write us at 1930 W Rio Salado Pkwy, Tempe, AZ 85281, Attn: Credit Bureau Disputes

Have a great day!

Robert Smith

(08/07/2022)

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

   (a) The Contract.
   (b) The vehicle or the sale of the vehicle.
   (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
   (d) The relationships resulting from the Contract.
   (e) Advertisements, promotions or oral or written statements related to the Contract.
   (f) The financing terms.
   (g) Your credit applications.
   (h) The origination and servicing of the Contract.
   (i) The collection of amounts you owe us.
   (j) Any repossession, or replevin, of the vehicle.
   (k) Your personal information.
   (l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a notice in writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN). You may email the notice to arbitrationoptout@carvana.com or you may mail it to us at:** Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281. **Emailed notices must be received by 11:59pm, Arizona time, on the 30th day from the contract date. If mailed, it must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration between you and us.**

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA1.docusign.net

Selection of Arbitration Administrator. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

Location of Hearing. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

No Class Action or Private Attorney General Action. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

Notice and Cure; Special Payment: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

Fees and Expenses. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

A-14

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA1.docusign.net

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

Applicable Law, Award of Arbitrator and Right to Appeal. Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

Miscellaneous. This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

A-15

DocuSign Envelope ID: FD6B116F-8327-46AF-BC2C-97456DB7F896

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

DocuSigned by:
Robert Smith
2DDDF67A52E84C0...

Customer Signature                                  Customer Signature

By: _____        Date: _____ 08/07/2022 _____
Authorized Signature

**ARBITRATION ADMINISTRATORS**

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsadr.com/arbitration
(800) 352-5267

*Exhibit B*

ROBERT SMITH II

2525 W WASHINGTON AVE APT
233
LAS VEGAS NV 89106

# BRIDGECREST

PO box 29018

Phoenix, AZ 85038
877-329-9029

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEMAND FOR DEBT VALIDATION

**BRIDGECREST**

I agree to pay any financial obligation which I may lawfully owe, ON THE CONDITION that you provide
the following;

1. Validation of the debt — that is, the actual accounting.
2. Verification of your claim against me; that is, a signed invoice.
3. A copy of the Contract binding both parties (BRIDGECREST and ROBERT SMITH)

Once the documents requested is provided and verified I have no problem performing the obligations
required to cure the account and prevent it from going into collections. Thank you for your cooperation.

State of Nevada
County of Clark

Robert Charles Smith II

APPEARED AND SIGNED BEFORE ME ON THIS
14th DAY OF May , 20 24

Notary Public

(without Prejudice UCC 1-308)

Robert Smith Attorney in fact  on behalf
of ROBERT SMITH PRINCIPAL

K. BAYARD
Notary Public, State of Nevada
Appointment No. 16-2097-1
My Appt. Expires Apr 15, 2028

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Exhibit B*

*2*

**Debt Validation Letter**

May 25, 2024

Robert Smith

2525 W. Washington #233

Las Vegas, Nevada 89106

Bridgecrest

7465 E. Hampton Ave

Mesa, AZ 85209

RE: Account #200190886801

To Whom It May Concern:

Be advised this is not a refusal to pay, but a notice that your claim is being disputed, and validation is requested. Under the Fair Debt Collection Practices Act (FDCPA), I have the right to request validation of the debt you say I owe you. I am requesting proof that I am indeed the party you are asking to pay this debt, and there is some contractual obligation that is binding on me to pay this debt.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to 15 USC 1692g Sec. 809 (b) of the FDCPA. I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

At this time I will also inform you that if your offices have or continue to report invalidated information to the three major credit bureaus (Equifax, Experian, Trans Union), this action might constitute fraud under both federal and state laws. Due to this fact, if any negative mark is found or continues to report on any of my credit reports by your company or the company you represent, I will not hesitate in bringing legal action against you and your client for the following: Violation of the Fair Debt Collection Practices Act and Defamation of Character.

I am sure your legal staff will agree that non-compliance with this request could put your company in serious legal trouble with the FTC and other state and federal agencies.

If your offices are unable to provide the proper documentation as requested in the following declaration, I will require 30 days to investigate this information and during

*Exhibit B*

*3*

such time all collection activity must cease and desist. Also, during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with legal counsel for suit. This includes any listings of any information to a credit-reporting repository that could be inaccurate or invalidated. If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

It would be advisable that you and your client assure that your records are in order before I am forced to take legal action.

CREDITOR/DEBT COLLECTOR DECLARATION Please provide the following:

- Agreement with your client that grants you the authority to collect on this alleged debt.
- Agreement that bears the signature of the alleged debtor wherein he/she agreed to pay the creditor.
- Any insurance claims been made by any creditor regarding this account.
- Any judgments obtained by any creditor regarding this account.
- Name and address of alleged creditor.
- Name on file of the alleged debtor.
- Alleged account number.
- Address on file for alleged debtor.
- Amount of alleged debt.
- Date this debt became payable.
- Date of original charge off or delinquency.
- Verification that this debt was assigned or sold to collector.
- Complete accounting of alleged debt.
- Commission for debt collector if collection efforts are successful.

Please provide the name and address of the bonding agent for "Bridgecrest" in case legal action becomes necessary. Your claim cannot and WILL NOT be considered if any portion of the above is not completed and returned with copies of all requested documents. This is a request for validation made pursuant to the Fair Debt Collection Practices Act. Please allow 30 days for processing after I receive this information back.

Best Regards

cc Federal Trade Commission

*Robert Smith II*

*5-28-24*

State of Nevada
County of Clark
Robert Charles Smith II
APPEARED AND SIGNED BEFORE ME ON THIS
28 DAY OF May , 20 24

*Cheyenne Luera* Notary Public

CHEYENNE LUERA
Notary Public, State of Nevada
Appointment No. 22-0676-01
My Appt. Expires Jun 28, 2026

PO BOX 53087
Phoenix, Arizona 85072

*Exhibit B*
*4*



June 17, 2024

Robert Smith
2525 W Washington Ave Apt 233
Las Vegas, NV 89106

| | |
|---|---|
| **Account Number** | 200190886801 |
| **Buyer** | Robert Charles Smith |
| **Co-Signer** | N/A |
| **Vehicle** | 2010 Mercedes-Benz E-Class |

**RE: Your Letter Dated June 8, 2024**

Thank you for your recent request. We have reviewed your account and have verified that you still owe the amount due under the contract. Additionally, we have determined that you are still in possession of our vehicle.

Please contact us to make an arrangement to pay your past due balance or return your vehicle.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest,
Customer Service

**For residents of California:**
**California Collection License #10732-99**

This is an attempt to collect a debt. Any information received will be used for that purpose. If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.

Rev. 12/2023

PO BOX 53087
Phoenix, Arizona 85072

*Exhibit B*
*5*



July 10, 2024

Robert Smith
2525 W Washington Ave Apt 233
Las Vegas, NV 89106

| | |
|---|---|
| **Account Number** | 200190886801 |
| **Buyer** | Robert Smith |
| **Co-Signer** | n/a |
| **Vehicle** | 2010 Mercedes-Benz E-Class |

**RE: Your Letter Dated July 3, 2024**

Thank you for your recent request. We have reviewed your account and have verified that you still owe the amount due under the contract. Additionally, we have determined that you are still in possession of our vehicle.

Please contact us to make an arrangement to pay your past due balance or return your vehicle.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest,
Customer Service

**For residents of California:**
**California Collection License #10732-99**

This is an attempt to collect a debt. Any information received will be used for that purpose. If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.

Rev. 12/2023

Exhibit B

6

Robert Smith II

Previous Address 2200 W. Bonanza Apt 302

Las Vegas Nevada, 89106


Current Address 2525 W. Washington Apt 233

Las Vegas Nevada 89106


August 15, 2024


Bridgecrest

7465 E Hampton Ave

Mesa Arizona, 85209


Subject: **Demand For Immediate Return of Repossessed Vehicle and Compensation for Damages**


Dear Bridgecrest,


I am writing to formally demand the immediate return of my 2010 Mercedes Benz E350, which was wrongfully repossessed by your company. This vehicle was paid off on September 12, 2022, as reflected in the account history. The repossession of my vehicle was not only illegal but has caused me significant distress and financial hardship.

Details of the Account:

- **Original Contract:** My original contract was with Carvana, and at no point in this contract is Bridgecrest mentioned. I was not informed that I will be making payments to your company.
- **Account balance:** as of September 8, 2022, the account related to my 2010 Mercedes Benz E350 reflected a balance of $15,909.78. On September 12, 2022, this vehicle was paid off, and the account showed a zero balance, with a credit of $81.38.

Ex B
—7

- **Account Alterations:** Despite the clear payoff on September 12, 2022, the account was inexplicably altered to show a balance of $16,441.16 and $16,359.78 on September 8, 2022. These incorrect balances were also reflected on September 12, 2022, before the account reverted to a new balance of $15,909.78 on the same day. This manipulation of the account is extremely concerning and must be addressed immediately.

**Demands:**

1. **Immediate Return of the Vehicle and Title:** I demand my 2010 Mercedes Benz E350, along with the title, be returned to me no later than August 18, 2024
2. **Compensation for Damages:** Due to the wrongful repossession of my vehicle, I have sustained significant financial and emotional damages. I demand compensation in the amount of $5000 to cover these damages.
3. **Reimbursement of Overpayment:** I demand a full reimbursement of any overpayment made to your company more than $1
4. **Correction of Account Information and cease Negative Reporting:** I demand that you immediately cease any negative reporting to credit bureaus concerning this account and that you correct any inaccuracies in my account history. Your actions may constitute violations under the Uniform Commercial Code (UCC), particularly UCC § 9-609, which governs the repossession collateral. Your failure to comply with the required legal standards in repossessing my vehicle has caused undue harm and any further reporting of this unlawful action would be inappropriate and illegal.

**Deadline for Compliance:** Please be advised if the vehicle and title are not returned to me, and if the full compensation and reimbursement are not provided by August 25, 2024, I will pursue all legal remedies available to me. This includes filing a lawsuit for illegal repossession, seeking damages for financial loss, emotional distress, and any other applicable claims.

I expect immediate and full compliance with these demands. I will not hesitate to take legal action to protect my rights and recover the damages caused by your unlawful actions.

Sincerely,

*Robert C Smith II*

8/15/24

(without prejudice)

**STATE OF NEVADA     COUNTY OF CLARK**

**SIGNED AND SWORN BEFORE ME ON THIS**

15th **DAY OF** August **, 20**24

**BY** Robert Charles Smith II

_____ **, NOTARY PUBLIC**

JEFFREY DELUTIS
Notary Public, State of Nevada
Appointment No. 22-3872-01
My Appt. Expires Oct 15, 2026

PO BOX 53087
Phoenix, Arizona 85072



*Ex  B*

August 20, 2024                                    *8*


Robert Smith
2525 W Washington Ave Apt 233
Las Vegas, NV  89106


| **Account Number** | 200190886801 |
|---|---|
| **Buyer** | **Robert Charles Smith** |
| **Co-Signer** | N/A |
| **Vehicle** | 2010 Mercedes-Benz E-Class Silver |


**RE: Your Inquiry Received**

Thank you for your recent request.  We have reviewed your account and have verified that you still owe the amount due under the contract.  Please make arrangements to pay your past due balance pursuant to the contract.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest
Customer Service


**For residents of California:**
**California Collection License #10732-99**

This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.
Rev. 12/2023

exhibit B - 9

**Robert C Smith II**

2525 W. Washington #233

Las Vegas NV 89106

702-750-5310

Date: October 24, 2024

**Bridgecrest Michael Gonzales**

**DriveTime | Bridgecrest | SilverRock | Director. Corporate Counsel**

5430 Lyndon B. Johnson Freeway

Tower 3, Suit 1250

Dallas, Texas 75240

**Subject:** Formal Complaint and Demand for Compensation Regarding Illegal Repossession of 2010 Mercedes Benz E350

Acc # 20019086901

To Bridgecrest and Michael Gonzales,

This letter serves as a formal notice regarding the complaint I submitted on August 24, 2024, pertaining to the illegal repossession of my 2010 Mercedes Benz E350 and various issues arising from Bridgecrest's involvement in the servicing of my contract. I hereby reiterate that Bridgecrest was never assigned to service this contract by Carvana. Bridgecrest is not listed on page one, section A of the contract, nor on page six as an assignee. Your organization's involvement with my account lacks any legal foundation, as the contract is exclusively with Carvarna.

**Account Discrepancies and Manipulations**

In Bridgecrest's response, I was provided with payment history reflecting payments for my Mercedes Benz E350 that raised several inconsistencies.

- A payment of $477 was entered on September 6, 2022, which was returned due to insufficient funds on September 7, 2022

ß ~ / ○

- An ACH payment of $462 was processed on September 8, 2022, along with a debit card payment of $453.95. The ACH payment of $462 was returned on September 12, 2022 due to insufficient funds.

- Despite no further payments being made in September according to Bridgecrest, the account reflected a zero balance, along with a credit of $81.38 from overpayment on September 12, 2022. The account also showed a prior balance of $15,909.70.

A zero balance does not accurately reflect the return payments of $447 and $462, nor does it show any other payments for the month of September 2022.

Moreover, the account showed another manipulation, with the balance reflecting $16,359.78 as October 12, 2022, despite the prior zero balance. On November 30, 2022, the payment history once again reflected a zero balance, along with a new credit of $146.57 from overpayment. This demonstrates that the account has been paid off twice, with two different credit balances, which raises serious questions about the integrity of the account records and the legality of Bridgecrest's involvement.

**Lack of Debt Validation and Proof of Assignment**

Your response claims that the debt was validated on three separate occasions – June 17, 2024, July 10, 2024 and august 20, 2024. However none of the documentation provided lists bridgecrest as a creditor on page one or as an assignee on page six of the contract. As my contract was establish with Carvana, Bridgecrest has failed to demonstrate any legal interest in or assignment of the contract.

Furthermore regarding the arbitration agreement signed with Carvana, I have no record of any agreement with Bridgecrest. Carvana never disclosed Bridgecrest as a creditor or as the entity responsible for servicing the contract related to the 2010 Mercedes Benz E350. Therefore Bridgecrest's Involvement in this matter lacks both legal and contractual validity.

**Legal Violations**

Bridgecrest's actions represent multiple legal violations, including but not limited to:

1. **Breach of Contract**: As Bridgecrest is not legally assigned to my contract, any actions taken on this account, including the repossession of my vehicle, constitute a breach of contract.

B - 11

2. **Fraud in Accounting:** The discrepancies in payment and balance history, as outlined above, point to potential fraudulent accounting practices.

3. **Mail fraud:** Falsely reporting information to credit reporting agencies is a violation of federal mail fraud statues.

4. **Conversion:** Refusing to return my personal and LLC property during the unlawful repossession process constitutes conversion.

5. **Violations of Consumer Rights:** under the Truth In Lending Act (TILA), Uniform Commercial Code (UCC), and Consumer Financial Protection Bureau(CFPB) guidelines, Bridgecrest has violated my rights as a consumer by failing to provide accurate, clear and timely information about the debt and by repossessing the vehicle without proper legal grounds.

**Demand for Compensation**

- **Return of the vehicle:** Immediate return of my 2010 Mercedes Benz E350

- **Loss of wages and business opportunities:** $50,000 to cover the economic impact caused by the illegal repossession.

- **Loss of personal and LLC property:** $20,000 to compensate for the loss of personal and business property.

- **Pain and suffering:** $50,000 for the emotional distress and hardship caused by the illegal repossession process.

- **Ongoing compensation:** $5000 per month for the next five years to address the long-term impact on my credit-worthiness and the continued emotional and financial hardship resulting from Bridgecrest's actions.

**Additional Compensation for Violations**

- Compensation for each legal violation mentioned above, including breach of contract, fraud in accounting, mail fraud, and conversion

- Repayment of all overpayments made, with interest accumulated. The amount of overpayment is $450.95 per month for 19 months, totaling $8,625.05 before interests. With accumulated interest, the repayment will be higher.

ß - 12

**Total compensation and Settlement Offer**

Upon adding up all the damages, I calculate a total amount of compensation. I am willing to settle the matter for a payment amount 8% less than the total sum. This offer is contigent upon immediate resolution and return of my vehicle.

**Time Limit to Respond**

Bridgecrest has 30 days from the date of this letter to respond. Failure to respond within this timeframe constitutes agreement and therefore I shall seek Summary Judgement upon your agreement.

Please direct all correspondence regarding this matter to me in writing at the address provided above.

Respectfully,

Robert C Smith II

**Calculations:**

- Overpayment compensation: $450.95* 19 months = $8,625.05 + interest

- Loss of wages/business opportunities: $50,000

- Pain and suffering: $50,000

- Ongoing credit damage: $5,000/month *60 months = $300,000

- Total $428,473.05 = interest

**Settlement offer (8% less): $393,395.21 + interest.**

4

B - 13

**Robert C. Smith II**
2525 W. Washington #236
Las Vegas, NV 89106
702-750-5310

**Date:** December 16, 2024

**To:**
Bridgecrest
Attn: Michael Gonzales, Director of Corporate Counsel
DriveTime | Bridgecrest | SilverRock
5430 Lyndon B. Johnson Freeway, Tower 3, Suite 1250
Dallas, Texas 75240

**Subject: Final Demand for Immediate Compensation and Reconciliation of Account Discrepancies**

**Dear Bridgecrest, Eva G., and  Mr. Gonzales,**

This letter serves as a **final demand** for compensation and immediate corrective action concerning the unlawful repossession and sale of my 2010 Mercedes Benz E350, fraudulent accounting practices, failure to validate the assignment of the contract, and your company's refusal to reconcile discrepancies in my account. Should this matter remain unresolved, I will pursue all available legal remedies, including formal litigation.

## Factual Background and Key Discrepancies:

1. **September 12, 2022 - Zero Balance with Credit of $81.38:**

   • Bridgecrest's own records reflect a **zero balance** on this date, accompanied by a **credit of $81.38** applied to my account.

   • A zero balance conclusively indicates that no further obligations were due at this time. However, despite this, Bridgecrest continued to issue demands for payment, which raises immediate concerns.

2. **November 30, 2022 - Zero Balance with Credit of $146.78:**

   • Similarly, Bridgecrest's records show a **zero balance** on this date, with an **additional credit of $146.78** applied.

   • No reasonable explanation has been provided for why this credit was applied or how any new charges could appear after this point, especially given the zero balance.

B-14

3. **Failure to Validate Assignment or Service of the Contract:**

• To date, Bridgecrest has failed to **validate the assignment or service of the contract** for my 2010 Mercedes Benz E350. Despite my repeated requests for this information, no verifiable evidence has been provided to demonstrate that Bridgecrest was authorized to service or collect on this contract.

• The failure to validate this assignment raises significant concerns about the legitimacy of Bridgecrest's involvement in this matter and calls into question the entire process by which they have been managing the account.

4. **Sale of Vehicle and Deprivation of Property:**

• It has come to my attention that Bridgecrest has **already sold my vehicle**, which was wrongfully repossessed despite the zero balances and credits on the account.

• As the rightful owner, I am entitled to not only the return of my property but also compensation for its unlawful sale, which was conducted without due process or adequate justification. This action further demonstrates Bridgecrest's disregard for legal procedure and contractual obligations.

## Legal Violations:

Bridgecrest's actions constitute violations of several key federal statutes, including:

1. **Fair Debt Collection Practices Act (FDCPA)** – 15 U.S.C. § 1692:

• The ongoing misrepresentation of debt, despite the existence of zero balances and credits, constitutes an unfair and deceptive practice under FDCPA, which explicitly prohibits such actions.

2. **Truth in Lending Act (TILA)** – 15 U.S.C. § 1601:

• Bridgecrest's failure to maintain accurate and transparent accounting practices, particularly the failure to reconcile credits with outstanding balances, violates TILA's mandates for clear and truthful disclosure of financial information.

3. **Fraudulent Accounting and Mail Fraud** – 18 U.S.C. § 1341:

• The blatant discrepancies and your failure to rectify these issues suggest potential fraudulent activity, including mail fraud. Misleading or

2

B-15

misrepresenting account status with the intent to collect debts falsely is actionable under federal law.

4. **Conversion:**

• The wrongful repossession of my vehicle and its subsequent sale without justification constitutes an unlawful conversion of my property. Bridgecrest has deprived me of my property and proceeds without due process, and this action may constitute theft or unauthorized disposal under the law.

## Demands for Immediate Action and Compensation:

In light of the aforementioned violations, I demand the following:

1. **Immediate Return of My Vehicle or Compensation for Its Sale:**

• Should Bridgecrest fail to return my 2010 Mercedes Benz E350, I demand **full compensation for its sale**, including the fair market value of the vehicle at the time of the sale, which I estimate to be at least **$18,000** based on market conditions.

2. **Compensation for Damages:**

• **Loss of Wages and Business Opportunities:** $50,000

• **Loss of Personal and LLC Property:** $20,000

• **Pain and Suffering:** $50,000

• **Ongoing Credit Damage:** $5,000 per month for the next five years, totaling $300,000

• **Punitive Damages for Fraudulent Practices:** $500,000

• **Putative Damages:** $300,000

• **Repayment of Overpayments:** $8,625.05 (for the overpayment period of 19 months, plus accrued interest)

**Total Compensation Demanded: $1,248,625.05.**

## Response Timeframe:

You are hereby given **7 days from the receipt of this letter** to provide a comprehensive response. This response must include:

1. A **detailed reconciliation** of all payments, credits, and debits associated with my account.

3

B-16

2. A **full explanation** as to why two zero balances were recorded and why subsequent claims for payment were made despite these reconciliations.

3. **Verification of Bridgecrest's Assignment and Service of the Contract**—Bridgecrest must provide clear and irrefutable evidence that it is authorized to service and collect on this contract.

4. The **immediate return of my vehicle**, or full compensation for its sale, including the fair market value at the time of sale.

Failure to meet these demands within the specified timeframe will leave me with no option but to pursue all available legal actions, including filing for **Summary Judgment** in court. Additionally, I will file complaints with the **Consumer Financial Protection Bureau (CFPB)**, **Federal Trade Commission (FTC)**, and all relevant state and federal regulatory agencies. I will also pursue the necessary civil remedies for fraud, breach of contract, conversion, and any other legal claims arising from your actions.

This is your final opportunity to resolve this matter without litigation.

**Respectfully,**

[signature]

**Robert C. Smith II**

State of Nevada
County of Clark
Robert Charles Smith II
APPEARED AND SIGNED BEFORE ME ON THIS 16 DAY OF December, 2024

[signature], Notary Public

MARCIA DURSO
Notary Public, State of Nevada
Appointment No. 19-3725-01
My Appt. Expires Jan 22, 2027

B-17

**Robert C. Smith II**
2525 W. Washington #233
Las Vegas, NV 89106
702-750-5310
Date: December 16, 2024

**Bridgecrest**
Eva G. Agent Specialist
Michael Gonzales, Director, Corporate Counsel
DriveTime | Bridgecrest | SilverRock
5430 Lyndon B. Johnson Freeway, Tower 3, Suite 1250
Dallas, Texas 75240

**Subject: Formal Request for Chain of Title Documentation Regarding 2010 Mercedes Benz E350**

Dear Bridgecrest, Eva G., and Michael Gonzales,

I am formally requesting full **documentation of the chain of title** for the 2010 Mercedes Benz E350. This request is based on the **Uniform Commercial Code (UCC)**, which governs the assignment and transfer of security interests, and the **legal requirement** that any entity attempting to collect a debt must prove **legal standing** to do so.

Please provide:

1.  Documentation showing the assignment of the contract from **Carvana** to **Bridgecrest**.

2.  Proof of any legal claim to the vehicle and the debt associated with it.

Under **UCC § 9-203**, debt collection can only be enforced if proper documentation of assignment and interest in the debt is provided. Failure to do so will result in this claim being invalid.

**Legal References**:

•   **UCC § 9-203**: Assignments of debt must be documented and enforceable.

•   **Midland Funding LLC v. Johnson**, 577 U.S. 510 (2016) emphasized the necessity of proving the assignment of debt.

•   **In re Laskowski**, 434 B.R. 446 (Bankr. N.D. Ill. 2010) ruled that failure to provide proof of assignment results in unenforceable claims.

B -18

Please send a response within **30 days** of this letter's date.  If no response is provided, I will pursue further legal action.

Respectfully,
(without prejudice)

Robert C. Smith II

State of Nevada
County of Clark
Robert Charles Smith II
APPEARED AND SIGNED BEFORE ME ON THIS
16 DAY OF December , 20 24

Marcia Durso , Notary Public

MARCIA DURSO
Notary Public, State of Nevada
Appointment No. 19-3725-01
My Appt. Expires Jan 22, 2027

2

Bridgecrest
PO Box 29018
Phoenix, AZ 85038
800-965-8029

08-14-2024

ROBERT SMITH                              1V-212 - 1
2525 W WASHINGTON AVE APT 233
LAS VEGAS NV  89106-3742

**NOTICE OF DISPOSITION AND OUR PLAN TO SELL PROPERTY**

RE:    Credit Transaction
Account Number:  200190886801
Vehicle Description:  2010 MERCEDES-BENZ E-Class
VIN:  WDDHF5GB6AA054779

We have your property described above, because you broke promises in our agreement.

We will sell the vehicle described above at private sale sometime after 2024-08-25. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.   As of the date of this notice, the amount you must pay to redeem is as follows:

| | |
|---|---|
| Unpaid Contract Balance | $13969.74 |
| Accrued Finance Charges | $1297.37 |
| Total Late Charges | $20.00 |
| Expenses of our retaking the vehicle | $600.00 |
| Expenses of our repairing the vehicle | $0.00 |
| Expenses of our storing the vehicle | $0.00 |
| Total Collection Charges | $0.00 |
| Other (specify) | $0.00 |
| | $ |
| | $15887.11 |
| **TOTAL AMOUNT REQUIRED TO REDEEM** | |

   * A credit against the Total Due to Redeem may be available for unearned finance charges or cancelled insurance.

These amounts reflect what you must pay to redeem your vehicle as of the date of this notice.  This amount may increase the longer you wait.  To learn the exact amount you must pay to redeem the vehicle, call us at the number listed above. To redeem the motor vehicle, you must submit payment in the amount of the TOTAL AMOUNT REQUIRED TO REDEEM listed above to Bridgecrest at the address listed above or call us at the number listed above to discuss other payment options.

**IMPORTANT BANKRUPTCY NOTICE:  If either you, your spouse, or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s).  If either you, your spouse, or anyone who is liable for this debt has filed for bankruptcy, we may be stayed from selling the repossessed collateral and from attempting to collect any debt from you.  If you receive a bankruptcy discharge of your debts in the bankruptcy case, this notice is not an attempt to collect a debt and is for informational purposes only.  We may, however, seek to enforce any existing security interests and liens against the repossessed collateral and other property that serves as collateral.  We will continue to proceed in accordance with all applicable laws and agreements.  This Notice of Disposition is for the purpose of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements.**

1V

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

We would also like to extend to you the privilege to get your vehicle back within 10 days from the date of this notice by paying the amount due at the time of the repossession (excluding any amount that would not be due except for an acceleration provision) and the actual and reasonable expenses incurred as a result of the retaking, repairing, and storage of the property, and curing any other defaults under the contract. To reinstate our agreement and get your motor vehicle back, you must bring your account current by paying the following amounts:

| | |
|---|---|
| Total Amount(s) Past Due (including other fees, and any other amounts added to your debt, if any, as allowed by law) | $2251.76 |
| Expenses of our retaking the vehicle | $600.00 |
| Expenses of our repairing the vehicle | $0.00 |
| Expenses of our storing the vehicle | $0.00 |
| Other (specify) | |
| _____ | $ _____ |
| _____ | |
| **TOTAL AMOUNT DUE TO REINSTATE** | $2851.76 |

These amounts reflect what you must pay to reinstate your contract and get your vehicle back as of the date of this notice. This amount may increase the longer you wait. To learn the exact amount you must pay to reinstate our agreement and any other actions you must take to cure other defaults under the contract, call us at 800-965-8029.

To reinstate the contract, you must submit payment in the amount of the Total Due to Reinstate listed above to Bridgecrest at PO Box 29018 Phoenix, AZ 85038 or call us at 800-965-8029 to discuss other payment options.

To reinstate your contract, you must also furnish proof of required insurance with loss payable endorsements to Bridgecrest, PO Box 29018 Phoenix, AZ 85038, at its address shown above, as required by your above-described retail installment contract.

If you redeem the motor vehicle or reinstate the contract, the motor vehicle will be returned to you at MANHEIM NEVADA 6600 AUCTION LANE, NORTH LAS VEGAS, NV 89165.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-965-8029 or write us at PO Box 29018 Phoenix, AZ 85038 and request a written explanation. We will charge you $0.00 for the explanation if we sent you another written explanation of the amount you owe us within the last six months.

If you need more information about the sale call us at 800-965-8029 or write us at PO Box 29018 Phoenix, AZ 85038.

We are sending this notice to the following other people who have an interest in the vehicle described above or who owe money under your agreement:

None

If you provide proof that you are a federal worker, tribal worker, state worker, or household member of such a worker and a government shutdown is occurring or has occurred, we cannot repossess or authorize another person to repossess your vehicle during the shutdown and for 30 days after the shutdown ends unless a court orders otherwise. If these protections apply to you, please contact us immediately at 800-967-8854. If we knowingly violate this rule, we may be guilty of a misdemeanor and liable for actual damages, reasonable attorney's fees and costs. In determining the amount of any award for wrongful repossession, the court must take into consideration any due diligence used by the lender before repossession.

Sincerely,

Bridgecrest

**IMPORTANT BANKRUPTCY NOTICE:** If either you, your spouse, or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s). If either you, your spouse, or anyone who is liable for this debt has filed for bankruptcy, we may be stayed from selling the repossessed collateral and from attempting to collect any debt from you. If you receive a bankruptcy discharge of your debts in the bankruptcy case, this notice is not an attempt to collect a debt and is for informational purposes only. We may, however, seek to enforce any existing security interests and liens against the repossessed collateral and other property that serves as collateral. We will continue to proceed in accordance with all applicable laws and agreements. This Notice of Disposition is for the purpose of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibit D Payment History

# Transaction History

| Account Number | Transaction Date | Transaction Amount | Transaction Event | Reversal Reason | NSF Date | Fee Type | Due Date | Next Due Date | Principal | Interest | Late Fee | Legacy Other Fee Fee | Principal Outstanding | Posted Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

P-2

D-3

Bridgecrest
PO Box 29018
Phoenix, AZ 85038

1V

10-31-2024

ROBERT SMITH
2525 W WASHINGTON AVE APT 233
LAS VEGAS NV  89106-3742

1V-183 - 1



Account Number:  200190886801

## Explanation of Calculation of Surplus or Deficiency
**Subject: Sale of  2010 MERCEDES-BENZ E-Class WDDHF5GB6AA054779**

As result of your default, we repossessed and sold the vehicle described above for $ 3800.00. This statement outlines the manner in which we applied the sale proceeds.

Explanation of Some Terms:
Surplus: The disposition proceeds are greater than the amount owed to us and secured by the vehicle (including applicable costs and expenses, and attorney's fees), resulting in a surplus that we will either return to you or pay to someone else claiming an interest in the vehicle.

Deficiency: The disposition proceeds are less than the amount owed to us and secured by the vehicle (including applicable costs and expenses, and attorney's fees), resulting in a deficiency.  You remain liable to us for this deficiency, which you are required to pay in full upon receipt of this communication.

### Calculation of Surplus or Deficiency

| | |
|---|---|
| Aggregate amount of obligations secured by the security interest as of 10-31-2024: | $ 15466.38 |
| Amount of the proceeds of the disposition: | $ 3800.00 |
| Aggregate amount of the obligations after deducting the amount of proceeds = | $ 11666.38 |
| Amount of expenses: | |
| Expenses of retaking: | $ 600.00 |
| Expenses of preparing for disposition: | $ 701.00 |
| Expenses of disposition: | $ 684.33 |
| Other expenses: | $ 0.00 |
| Amount of attorney fees and costs (if any): | $ 0.00 |
| ADD: Total Expenses = | $ 1985.33 |
| Amount of credits and/or rebates: | N/A |
| Unearned finance charges: | $ 0.00 |
| Rebates of insurance premiums (VSC, GAP, GPS): | $ 0.00 |
| LESS: Total Credits and Rebates = | |

Notice of mail sent







2





 An official website of the United States Government    *Exhibit C - 1*

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)    Start a new complaint

‹ All complaints (.)

# 240824-15753309
**CLOSED**

✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 8/24/2024 | Vehicle loan or lease | Repossession |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

### **Details of the Complaint:** On **August 7, 2022**, I purchased a vehicle through Carvana. Nowhere in the contract or agreement does it state or mention Bridgecrest as a party involved in the loan or financing arrangement. However, Bridgecrest has since been involved in collecting payments and repossessing the vehicle, despite not being disclosed in the original agreement. On **June 8, 2024**, I contacted Bridgecrest to request a **debt validation**. In response, they sent me copies of my contract with Carvana and my payment history. However, nowhere in these documents is Bridgecrest mentioned. On **July 3, 2024**, I sent Bridgecrest a **Notice of Default** regarding the debt, but I did not receive any response. Subsequently, I sent a follow-up **Debt Collection Dispute Letter** on **July 17, 2024**, but again received no response. On **August 13, 2024**, Bridgecrest repossessed my vehicle without prior notice or resolution of the dispute. Then, on **August 23, 2024**, I receive a **Notice of Disposition** dated

**August 14, 2024**, stating their intent to sell the vehicle. On **August 15, 2024**, I sent a **Demand Letter** to Bridgecrest requesting the immediate return of my vehicle, compensation for lost wages, and damages incurred due to the wrongful repossession. I received no meaningful response to this demand. Upon reviewing the documents provided by Bridgecrest, I found discrepancies in the accounting history of the vehicle. The account initially indicated a **zero balance** and showed a **credit of $81.38 on September 12, 2022**. However, this history was altered or manipulated to now reflect a balance of **over $16,000**. On **August 20, 2024**, Bridgecrest sent a letter stating they had validated the debt. They provided another copy of my original contract with Carvana, along with a new, altered accounting record. This new record showed a **zero balance as of September 7, 2022**, a credit of $81.38 on **October 7, 2022**, and then it was manipulated to show a balance of **$16,441.16**.

Hide full complaint ⊖

## What product or service is your complaint about?

**PRODUCT OR SERVICE**
Vehicle loan or lease

**TYPE**
Lease

**NEW OR USED?**
Used

## What type of problem are you having?

**ISSUE**
Repossession

**TYPE OF ISSUE**
Damage caused or loss of personal items in vehicle during the actual repossession

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**
Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**
No

## What happened?

*Exhibit G3*

### **Details of the Complaint:** On **August 7, 2022**, I purchased a vehicle through Carvana. Nowhere in the contract or agreement does it state or mention Bridgecrest as a party involved in the loan or financing arrangement. However, Bridgecrest has since been involved in collecting payments and repossessing the vehicle, despite not being disclosed in the original agreement. On **June 8, 2024**, I contacted Bridgecrest to request a **debt validation**. In response, they sent me copies of my contract with Carvana and my payment history. However, nowhere in these documents is Bridgecrest mentioned. On **July 3, 2024**, I sent Bridgecrest a **Notice of Default** regarding the debt, but I did not receive any response. Subsequently, I sent a follow-up **Debt Collection Dispute Letter** on **July 17, 2024**, but again received no response. On **August 13, 2024**, Bridgecrest repossessed my vehicle without prior notice or resolution of the dispute. Then, on **August 23, 2024**, I receive a **Notice of Disposition** dated **August 14, 2024**, stating their intent to sell the vehicle. On **August 15, 2024**, I sent a **Demand Letter** to Bridgecrest requesting the immediate return of my vehicle, compensation for lost wages, and damages incurred due to the wrongful repossession. I received no meaningful response to this demand. Upon reviewing the documents provided by Bridgecrest, I found discrepancies in the accounting history of the vehicle. The account initially indicated a **zero balance** and showed a **credit of $81.38 on September 12, 2022**. However, this history was altered or manipulated to now reflect a balance of **over $16,000**. On **August 20, 2024**, Bridgecrest sent a letter stating they had validated the debt. They provided another copy of my original contract with Carvana, along with a new, altered accounting record. This new record showed a **zero balance as of September 7, 2022**, a credit of $81.38 on **October 7, 2022**, and then it was manipulated to show a balance of **$16,441.16**.

☐ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

## What would be a fair resolution to this issue?

**Resolution Sought:** 1. **Immediate return of my repossessed vehicle**. 2. **Compensation for lost wages and damages** caused by the wrongful repossession of the vehicle. 3. **Refund of any overpayments** exceeding $1, along with accumulated interest. 4. **Correction of my credit reports** with all credit bureaus, removing any adverse effects related to this incident. --- I respectfully request that the CFPB investigate Bridgecrest's handling of my account, their failure to provide adequate validation of the debt, and the unlawful repossession of my vehicle. Their actions have caused significant financial and emotional distress, and I seek a fair resolution to these issues. Sincerely, Robert Smith II Bosseriffic@gmail.com 702-750-5310

Complaint Detail

C - 4

# What company is this complaint about?

**COMPANY INFORMATION**

BRIDGECREST ACCEPTANCE
CORPORATION

**ACCOUNT NUMBER**

•••••••••  👁

# What people are involved?

**YOUR CONTACT INFORMATION**

Robert Smith

bosseriffic@gmail.com
7027505310

2525 W Washington Apt 233 Las
Vegas, Nevada 89106 United States

**YOUR PREFERRED LANGUAGE**

English

**YOUR DEMOGRAPHIC
INFORMATION**

**AGE**

37

**SEX**

Male

**HISPANIC, LATINO, OR SPANISH
ORIGIN**

No

**RACE**

black American

**HOUSEHOLD SIZE INCLUDING
TOTAL NUMBER OF ADULTS AND
CHILDREN**

4

**COMBINED ANNUAL HOUSEHOLD
INCOME**

$35,000 - $49,999

C - 5

 ## Sent to company

**STATUS**

Sent to company on 8/24/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 9/5/2024

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Bridgecrest is currently researching Mr.Smith's concerns and will be responding as soon as possible. Thank you.



C-6

# Company responded

| STATUS | RESPONSE TYPE |
| --- | --- |
| Company responded on 10/17/2024 | Closed with explanation |

## Company's Response

October 17, 2024 Consumer Financial Protection Bureau Re: Complaint # 240824-15753309 To Whom It May Concern: Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Robert Smith's concerns. We have confirmed that we have followed all policies and procedures in the allocation of the payments and the recovery assignment of the vehicle. Please see the following for details. On August 7, 2022, Mr. Smith entered a Retail Installment Contract (Contract), when he purchased a 2010 Mercedes-Benz from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Smith agreed to remit monthly payments of $447.00 beginning September 7, 2022. Mr. Smith also agreed to finance a total of $16,441.16 with a 25.366% Annual Percentage Rate (APR), for a total sales price of $34,126.14, as outlined in the Truth in Lending Disclosures on page one of the Contract. At the time of signing, Mr. Smith was provided with the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Smith asserted he had read and fully understood the terms enclosed. On page six of the Contract, it states: "Seller may transfer this Contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The seller may assign this contract electronically." During May and June 2024, we received multiple letters from Mr. Smith requesting we validate the debt. We were unable to provide a validation of debt as the information provided in the letter did not include sufficient information to locate an account or did not match the address on file. On both occasions, we sent Mr. Smith a letter explaining the abovementioned information. On August 20, 2024, we received a letter from Mr. Smith regarding similar concerns as outlined in his complaint. At that time, we sent him a validation of debt letter, along with copies of his Retail Purchase Agreement, Contract, Credit Reporting Notice, and the account's transaction history report. When an account is past due, Bridgecrest attempts to contact our customers to assist in bringing the account current. We offer clear and upfront information in our communication by sending email and text notifications to our customers who may be facing delinquent credit reporting or other identified impacts such as vehicle recovery. We can confirm we made multiple attempts to notify Mr. Smith regarding the status of his account

and recovery assignment. On May 8, 2024, at 31 days past due, we sent Mr. Smith a Right to Cure and Intent to Repossess letter to the address on file. This letter is automatically generated per each state's specific guidelines and is sent when an account reaches a specific number of days past due. We can confirm that sufficient payment was not received to cure the default, and the account continued to fall further delinquent. On July 26, 2024, at 110 days past due, the vehicle was assigned for recovery due to nonpayment. On August 14, 2024, the vehicle was recovered and we sent Mr. Smith a Notice of Disposition and Our Plan to Sell Property (NOI) letter to the address on file, outlining the options to reinstate or redeem the account or the vehicle would be sold at auction. On the same day, we spoke with Mr. Smith regarding the redemption process. He expressed no interest in redeeming the vehicle. On August 30, 2024, at 145 days past due and with no payment remitted toward reinstatement, the account moved into a charge-off status and was subsequently reported as such to the three major CRAs. Upon receipt of Mr. Smith's complaint, on September 13, 2024, we spoke with Mr. Smith and discussed the abovementioned information. He expressed dissatisfaction with the information provided, however, the call ended amicably. We are unable to accommodate Mr. Smith's request to release the vehicle prior to remittance of the remaining reinstatement amount, provide any compensation, or alter our accurate reporting of his tradeline. Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Smith have any additional questions, please contact our Customer Relations department at 800-967-8854. Thank you, Eva G. Agency Specialist

**ATTACHMENTS**

200190886801

ALLY-BC CFPB

RESPONSE.pdf

(123.3 KB)

 # Feedback provided

**STATUS**

Feedback provided on 10/18/2024

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

C - 8

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

Bridgecrest did not address the issues of the complaint. Never once validated the debt or the assignment of the debt for them to be involve or have interest in the contract between Carvana and myself. Over a phone conversation Bridgecrest stated that Carvana Bridgecrest and Drivetime are all the same company so I asked then why is Carvana stating that they have been paid in full on the account regarding my Mercedes Benz E350 and how is it that Bridgecrest is saying I owe. Never gave an explanation also Bridgecrest never addressed or spoke about the zero balance transaction that took place not once but twice in the accounting payment history. Bridgecrest in their response to my complaint never addressed the issues of them manipulating the account to reflect different balances nor was an explanation given on the change of account information that was changed or altered after communicating with Bridgecrest through certified mail complaining that the account shows a zero balance not once but twice with two different credits one on September 12, 2022 with a credit of $81.38 and again on November 28, 2022 with a credit of $146.57 and why are the copies sent of this information different from the original after complaining about the details of the accounting history. Bridgecrest still never once validated the assignment of the debt because like they stated I never signed an actual contract with them nor was I ever informed of my contract being assigned to them especially since my contract doesn't have any one as the assignee in the assignment section of the contract. Bridgecrest claim I had no interest in the property when I reached out to them multiple times via certified mail and twice over the phone with no answers to my questions or complaints. If Bridgecrest actually did what they was supposed to do why would they request more time to provide information that's supposed to be already available. On top of that the information provided doesn't discuss or touch on the basis of the complaints I have especially the proof of them being assigned to service my contract and the reason for two zero balances with two different credits.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).
- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised

by consumers in their complaints. We will also share your
feedback with the company.

- We have also shared your complaint with the Federal Trade
  Commission, which will add your complaint to its database for
  state and federal law enforcement agencies.

We appreciate your participation in the complaint process and
your feedback on the company's response. Both are important to
us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-
leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government



October 16, 2024

**VIA FEDEX OVERNIGHT:**
Tracking No. 779311300062

Robert Charles Smith
2525 W Washington Ave Apt 233
Las Vegas, NV 89106-3742

RE:    **Your correspondence dated August 24, 2024**
       **Account Number: 200190886801**

Dear Mr. Smith:

Bridgecrest Credit Company, LLC ("Bridgecrest") is in receipt of your correspondence dated August 24, 2024, which we received on August 30, 2024. You allege, among other things, wrongful repossession, breach of contract, and violations of federal and state laws. After a thorough review, we confirm the servicing of your account is accurate and complies with applicable state and federal laws. Therefore, we deny your allegations and reject your demands.

You entered into a Contract for Sale and Security Agreement for Sale with Simple Interest (the "Contract") with Carvana, LLC ("Carvana") for the purchase of a 2010 Mercedes Benz E-Class (the "Vehicle") on August 7, 2022. Bridgecrest is the servicer of your account on behalf of Carvana based on the Contract. Bridgecrest is not the financer of the purchase. The attached welcome document was provided to you at the time of purchase, which explains "Bridgecrest will be your servicing partner for the life of your vehicle account."

With respect to your claims relating to the transaction history, we believe there may be confusion as to your payment history. Our records indicate that on September 6, 2022, an AutoPay payment in the amount of $477.00 was processed; however, this payment was returned due to insufficient funds on September 7, 2022. On September 8, 2022, you processed an ACH payment in the amount of $462.00 and a debit card payment in the amount of $453.95. The ACH payment of $462.00 was returned due to insufficient funds on September 12, 2022. No additional payments were made in September 2022. The suggestion that the account was paid off is incorrect given that the original balance of the loan was $16,441.16. A copy of the transaction history for your account is enclosed with this letter for your reference.

We thoroughly reviewed your account as part of our investigation into this matter, including the application of all payments that have been made. There is no basis for your allegations that your account was manipulated in any way. Any payments that have been removed have either been due to insufficient funds or due to your requests to have payments applied to principal only in which the payment was reapplied appropriately.

Concerning your validation of debt claims, we have now validated your debt three separate times. We did so on June 17, 2024, July 10, 2024, and August 20, 2024. You failed to make timely payments due under the Contract. Our records show that on May 8, 2024, at 31 days past due, we sent a Notice of Right to Cure and Intent to Repossess. Additionally, on July 12, 2024, and July



19, 2024, we sent repossession notifications via email. On August 14, 2024, 129 days past due the Vehicle was recovered. Following the recovery of the Vehicle, we sent a Notice of Disposition and Our Plan to Sell Property letter. To ensure you have complete and accurate records, we attached the documents for your review.

Considering that your correspondence asserts your intent to file your draft complaint in court, should you wish to proceed, we refer you to the Arbitration Agreement you agreed to and signed at the time of purchase.

We invite you to contact us for information concerning your account and to pay the debt you owe under your Contract, as you remain responsible for the amounts due on your account. You may also contact Bridgecrest to discuss the status of the Vehicle and payment options that may be available.

Regards,

Michael Gonzales
DriveTime | Bridgecrest | SilverRock | Director, Corporate Counsel
5430 Lyndon B. Johnson Freeway
Tower 3, Suite 1250
Dallas, Texas 75240
legal@drivetime.com

*Enclosures*

Bridgecrest
PO Box 29018
Phoenix, AZ 85038
877-329-9029

05-08-2024

ROBERT SMITH                    1-   559 - 1
2525 W WASHINGTON AVE APT 233
LAS VEGAS NV 89106-3742



## NOTICE OF RIGHT TO CURE AND INTENT TO REPOSSESS

RE:   Credit Transaction
      Account Number:        200190886801
      Vehicle Description:   2010 MERCEDES-BENZ E-Class
      VIN:                   WDDHF5GB6AA054779

LAST DAY FOR PAYMENT: 05-18-2024
AMOUNT NOW DUE: 890.76 **

You are late in making your payment(s). If you pay the AMOUNT NOW DUE listed above by the LAST DAY FOR PAYMENT listed above, you may continue with the contract as though you were not late. Please send payment to Bridgecrest at the address listed above or call us at the number listed above to discuss other payment options.

**The AMOUNT NOW DUE reflects what you must pay as of the date of this notice to cure your default. You remain responsible for making any future scheduled payments that may become due after the date of this notice that are not included in the AMOUNT NOW DUE listed above. As a result, the AMOUNT NOW DUE may increase the longer you wait. To learn the exact amount you must pay to cure your default and any subsequent defaults that may have occurred, call us at the number listed above.

If you do not pay by the LAST DAY FOR PAYMENT listed above, we may exercise our rights under the law. These rights include the right to repossess any property held as collateral for this transaction and the right, in many instances, to hold you personally responsible for any difference between the amount the property brings in a sale and the balance due us on the credit transaction in question.

We may exercise these rights even though we may have accepted a late payment in the past. Strict compliance with your requirements under your contract is required from now on to avoid repossession in the future. If you are late again in making your payments, we may exercise our rights without sending you another notice like this one.

Please contact us immediately at 800-967-8854 if you are a federal worker, tribal worker, state worker, or household member of such a worker and a government shutdown is occurring or has occurred, as you may have additional rights.

If you have any questions, please write or telephone us promptly at the address or number listed above.

IMPORTANT BANKRUPTCY NOTICE: If either you, your spouse or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed to provide information regarding the bankruptcy case(s). If we receive information about your bankruptcy before the LAST DAY FOR PAYMENT listed above, we will stop the repossession process. We will continue to proceed in accordance with all applicable laws and agreements.

Sincerely,

Bridgecrest

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

 An official website of the United States Government

 Consumer Financial
Protection Bureau

C-10

(https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 241024-16639918

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 10/24/2024 | Vehicle loan or lease | Repossession |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

Complainant Information: • Date: October 24, 2024 Complaint Overview: This complaint is a follow-up to my previous complaint dated August 24, 2024, regarding Bridgecrest's involvement in the illegal repossession of my 2010 Mercedes Benz E350, a breach of contract, fraud of accounting, mail fraud, and conversion of my personal and LLC property. I am requesting the CFPB's urgent attention in addressing these matters. Issues Raised: 1. Bridgecrest's Lack of Assignment: Bridgecrest has no legal right to service my contract with Carvana. According to my contract, Bridgecrest is not listed as a creditor on page one, section A, nor are they mentioned on page six as being assigned to the contract. Bridgecrest has provided no valid documentation confirming their legal right or interest in this contract. Despite these facts, they repossessed my vehicle on August 14, 2024, without lawful grounds. 2. Discrepancies in Payment History: Bridgecrest's provided payment history includes multiple inconsistencies. For instance: • A $477 payment made on

C-14

September 6, 2022, was returned due to insufficient funds, as was a $462 ACH payment on September 8, 2022. • On September 12, 2022, the account was credited with $81.38 for an overpayment, showing a prior balance of $15,909.70, which should reflect a zero balance with no further returned payments. • Further manipulation occurred when, on October 12, 2022, a new balance of $16,359.78 was reflected, only for the balance to again show zero by November 30, 2022, and an additional credit of $146.57 was applied. These manipulations indicate the account was paid off twice with different credit balances, without any valid justification from Bridgecrest. 3. Debt Validation and Assignment Issues: Bridgecrest claims to have validated the debt three times, on June 17, 2024, July 10, 2024, and August 20, 2024. However, the documentation they provided does not prove their interest in the contract. As stated, Bridgecrest is not named as the creditor on page one, nor does it show any assignment of the contract from Carvana to Bridgecrest. Without this legal validation or assignment, Bridgecrest cannot claim any authority to service the debt or repossess the vehicle. 4. Arbitration Agreement Dispute: I never signed or agreed to an arbitration agreement with Bridgecrest. My contract is with Carvana, and Bridgecrest's involvement was never mentioned or agreed upon. Any claims by Bridgecrest regarding arbitration are void, as I have no contractual obligation with them. 5. Violations of Legal Rights: The illegal repossession of my vehicle violates multiple laws, including: • Truth in Lending Act (TILA): For failing to properly disclose their interest in the contract. • Uniform Commercial Code (UCC): For conducting an unauthorized repossession and not providing a valid assignment. • Fair Debt Collection Practices Act (FDCPA): For not validating the debt and continuing illegal collection practices. • Fraud of Accounting and Mail Fraud: For manipulating account history and providing false information to credit reporting agencies (CRAs). • Conversion: For refusing to return my personal and LLC property during the repossession.

View full complaint ⊕

 **Sent to company**

**STATUS**

Sent to company on 10/24/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 Company
still working

**STATUS**

Company
response is in
progress as of
11/8/2024

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response
within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Bridgecrest is currently researching Mr.Smith's concerns and will
be responding as soon as possible. Thank you.

 Company
responded

**STATUS**                  **RESPONSE
                            TYPE**

Company                     Closed with
responded                   explanation
on
11/29/2024

## Company's Response

November 29, 2024 Consumer Financial Protection Bureau Re:
Complaint # 241024-16639918, 241114-16956455, 241115-
16983608 To Whom It May Concern: Thank you for bringing this
matter to our attention. Bridgecrest Acceptance Corporation and
its subsidiaries (Bridgecrest) appreciate the opportunity to
address Mr. Robert Smith's concerns. We have confirmed that we
have followed all policies and procedures in the allocation of the
payments and the recovery assignment of the vehicle. Please see
the attached for details.

C-13

ATTACHMENTS

ALLY BC CFPB
RESPONSE.pdf
(220.5 KB)

# Feedback requested

| STATUS | FEEDBACK DUE |
|--------|--------------|
| Feedback requested on 11/29/2024 | 1/28/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will
have 60 days from when the company responded to share your feedback. The CFPB will
share your feedback responses with the company and use the information to help the
CFPB's work with consumer complaints.

**Submit your feedback**

# Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

C-14

# Bridgecrest™

November 29, 2024

Consumer Financial Protection Bureau

Re: Complaint # 241024-16639918, 241114-16956455, 241115-16983608

To Whom It May Concern:

Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Robert Smith's concerns. We have confirmed that we have followed all policies and procedures in the allocation of the payments and the recovery assignment of the vehicle. Please see the following for details.

On August 7, 2022, Mr. Smith entered a Retail Installment Contract (Contract), when he purchased a 2010 Mercedes-Benz E-Class from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Smith agreed to remit monthly payments of $447.00 beginning September 7, 2022. Mr. Smith also agreed to finance $16,441.16 at a 25.3% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. At the time of signing, Mr. Smith was provided with the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Smith asserted he had read and fully understood the terms enclosed. On page six of the Contract, it states: *"Seller may transfer this Contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The seller may assign this contract electronically.".*

When an account is past due, Bridgecrest attempts to contact our customers to assist in bringing the account current. We offer clear and upfront information in our communication by sending email and text notifications to our customers who may be facing delinquent credit reporting or other identified impacts such as vehicle recovery. We can confirm we made multiple attempts to notify Mr. Smith regarding the status of his account and recovery assignment. On May 8, 2024, at 31 days past due, we sent Mr. Smith a Right to Cure and Intent to Repossess letter to the address on file. This letter is automatically generated per each state's specific guidelines and is sent when an account reaches a specific number of days past due. We can confirm that sufficient payment was not received to cure the default, and the account continued to fall further delinquent.

On July 26, 2024, at 110 days past due, the vehicle was assigned for recovery due to nonpayment. On August 14, 2024, the vehicle was recovered, and we sent Mr. Smith a Notice of Disposition and Our Plan to Sell Property (NOI) letter to the address on file, outlining the options to reinstate or redeem the account or the vehicle would be sold at auction. On the same day, we spoke with Mr. Smith regarding the redemption process. He expressed no interest in redeeming the vehicle.

On August 20, 2024, we received a letter from Mr. Smith regarding similar concerns outlined in his complaint. At that time, we sent him a validation of debt letter, along with copies of his Retail Purchase Agreement, Contract, Credit Reporting Notice, and the account's transaction history report.

C-15

# Bridgecrest™

On August 30, 2024, at 145 days past due and with no payment remitted toward reinstatement, the account moved into a charge-off status and was subsequently reported as such to the three major CRAs.

On September 13, 2024, we spoke with Mr. Smith regarding his previous complaint #240824-15753309, regarding similar concerns as in his current complaints. At that time, we explained and attempted to clarify the information outlined in the transaction history report he was provided. We further advised his account balance was valid as the account balance has not been satisfied in full. Mr. Smith expressed dissatisfaction with the information provided, however, our call ended amicably.

Upon receipt of Mr. Smith's complaint, we spoke with Mr. Smith on October 30, 2024, and discussed his concerns. We explained the abovementioned information and that he had the opportunity to obtain his belongings from the vehicle after it was recovered. The call ended amicably. Upon completing our review of Mr. Smith's account, we confirmed that all payments have been allocated accurately to the account and that he is responsible for the remaining balance on his account. We are unable to accommodate Mr. Smith's request to provide any compensation or release the vehicle as the remittance of the remaining reinstatement amount was not satisfied.

Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Smith have any additional questions, please contact our Customer Relations department at 800-967-8854.

Thank you,

Eva G.
Agency Specialist

2

 An official website of the United States Government

 Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)    $C-16$    Start a new complaint

‹ All complaints (.)

## 241115-16983608

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 11/15/2024 | Vehicle loan or lease | Repossession |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

Summary Judgment Complainant Information: • Complainant: Robert Charles Smith II • Date of Original Complaint: August 24, 2024 • Follow-up Complaint Date: October 24, 2024 • Respondents: Bridgecrest Credit Company, Eva G. (Agency Specialist), Michael Gonzales (Director, Corporate Counsel) • Date November 13, 2024 Complaint Overview: This case addresses Bridgecrest's alleged unauthorized involvement in the servicing, debt collection, and repossession of a 2010 Mercedes Benz E350, originally purchased through Carvana on August 7, 2022. The complainant, Robert Charles Smith II, asserts that Bridgecrest is not legally assigned as a party to this contract and therefore lacks the authority to repossess the vehicle, enforce collections, or proceed with any legal claims on the vehicle. Key Issues Raised 1. Unauthorized Assignment of Contract • Claim: The complainant's contract with Carvana does not mention Bridgecrest as a creditor, assignee, or third-party service provider. Bridgecrest's involvement in collections and the subsequent repossession is alleged to be unauthorized and without legal basis. • Evidence: Despite multiple debt validation requests from the complainant, Bridgecrest has failed to provide valid documentation proving its legal right to service the contract or its assignment by Carvana. • Response from Bridgecrest: Bridgecrest claims to be the account servicer on behalf of Carvana, citing the contract's clause that allows for assignment. However, no specific assignment of this contract to Bridgecrest was presented in the documentation they provided. In fact the documents are marked with N/A indicating that it's not assigned to anyone or not applicable. 2. Account and Payment History Discrepancies • Claim: The complainant highlights several discrepancies in the payment history, suggesting account manipulation. Records initially indicated a zero balance, which was later altered to reflect a debt exceeding $16,000. • Specific Discrepancies: Payments recorded include an ACH payment on September 6, 2022, which was returned for insufficient funds, yet a credit appeared on September 12, 2022, for overpayment. Repeated account adjustments and varying balance totals indicate possible account tampering. • Response from Bridgecrest: Bridgecrest denies any manipulation and claims that the account reflects accurate allocations and application of payments. They provided an account history but failed to address the specific discrepancies noted by the complainant. 3. Debt Validation Issues • Claim: The complainant requested validation of debt on June 8, 2024, July 3, 2024, and July 17, 2024. The responses from Bridgecrest, including a new contract copy and payment history, did not address the lack of a legal assignment, making the validation incomplete and unsubstantiated. • Response from Bridgecrest: Bridgecrest asserts that they validated the debt on multiple occasions. However, they failed to provide any documents proving their assignment to the contract or legal standing to collect. 4. Violation of Legal Rights and Unlawful Repossession • Claim: Bridgecrest's repossession on August 14, 2024, is alleged to be illegal, as Bridgecrest lacks authorization under the contract. The repossession violated the Truth in Lending Act (TILA), Uniform Commercial Code (UCC), Fair Debt Collection Practices Act (FDCPA), and involved alleged fraud and conversion. • Evidence of Misconduct: After the repossession, Bridgecrest allegedly sold the complainant's personal and LLC property that was in the vehicle, exacerbating the alleged violations. • Response from Bridgecrest: In correspondence with the complainant, Bridgecrest referred to an arbitration agreement and suggested legal proceedings if the complainant pursued court action. They did not directly address the TILA, UCC, FDCPA, or conversion claims. 5. Response Delays and Failure to Address Core Issues • Claim: Bridgecrest's responses to the CFPB and complainant were delayed, and none adequately addressed the core complaint of unauthorized assignment or the specific discrepancies in account history. • Further Allegations: Despite these delays, Bridgecrest proceeded with additional unauthorized actions, including the sale of the vehicle and its contents. • Response from Bridgecrest: Correspondence from Bridgecrest representatives Eva G. and Michael

C-17

Gonzales confirmed the repossession and reiterated Bridgecrest's servicing role, without substantiating their legal right or addressing the request to return the vehicle or compensate for losses incurred. Complainant's Follow-up Demand In the follow-up complaint submitted to the CFPB on October 24, 2024, the complainant reiterated their demands for: • Immediate Return of Vehicle: Due to the unauthorized repossession. •

**ATTACHMENTS**

IMG_6654.jpeg (2.2 MB) IMG_6655.jpeg (1.8 MB) IMG_6640.jpeg (2.2 MB) IMG_6644.jpeg (1.6 MB) IMG_6647.jpeg (3 MB) IMG_6646.jpeg (953 KB) IMG_6652.jpeg (2.1 MB)

Hide full complaint ⊖

## What product or service is your complaint about?

**PRODUCT OR SERVICE**
Vehicle loan or lease

**TYPE**
Lease

**NEW OR USED?**
Used

## What type of problem are you having?

**ISSUE**
Repossession

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**
Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**
No

**TYPE OF ISSUE**
Damage caused or loss of personal items in vehicle during the actual repossession

## What happened?

Summary Judgment Complainant Information: • Complainant: Robert Charles Smith II • Date of Original Complaint: August 24, 2024 • Follow-up Complaint Date: October 24, 2024 • Respondents: Bridgecrest Credit Company, Eva G. (Agency Specialist), Michael Gonzales (Director, Corporate Counsel) • Date November 13, 2024 Complaint Overview: This case addresses Bridgecrest's alleged unauthorized involvement in the servicing, debt collection, and repossession of a 2010 Mercedes Benz E350, originally purchased through Carvana on August 7, 2022. The complainant, Robert Charles Smith II, asserts that Bridgecrest is not legally assigned as a party to this contract and therefore lacks the authority to repossess the vehicle, enforce collections, or proceed with any legal claims on the vehicle. Key Issues Raised 1. Unauthorized Assignment of Contract • Claim: The complainant's contract with Carvana does not mention Bridgecrest as a creditor, assignee, or third-party service provider. Bridgecrest's involvement in collections and the subsequent repossession is alleged to be unauthorized and without legal basis. • Evidence: Despite multiple debt validation requests from the complainant, Bridgecrest has failed to provide valid documentation proving its legal right to service the contract or its assignment by Carvana. • Response from Bridgecrest: Bridgecrest claims to be the account servicer on behalf of Carvana, citing the contract's clause that allows for assignment. However, no specific assignment of this contract to Bridgecrest was presented in the documentation they provided. In fact the documents are marked with N/A indicating that it's not assigned to anyone or not applicable. 2. Account and Payment History Discrepancies • Claim: The complainant highlights several discrepancies in the payment history, suggesting account manipulation. Records initially indicated a zero balance, which was later altered to reflect a debt exceeding $16,000. • Specific Discrepancies: Payments recorded include an ACH payment on September 6, 2022, which was returned for insufficient funds, yet a credit appeared on September 12, 2022, for overpayment. Repeated account adjustments and varying balance totals indicate possible account tampering. • Response from Bridgecrest: Bridgecrest denies any manipulation and claims that the account reflects accurate allocations and application of payments. They provided an account history but failed to address the specific discrepancies noted by the complainant. 3. Debt Validation Issues • Claim: The complainant requested validation of debt on June 8, 2024, July 3, 2024, and July 17, 2024. The responses from Bridgecrest, including a new contract copy and payment history, did not address the lack of a legal assignment, making the validation incomplete and unsubstantiated. • Response from Bridgecrest: Bridgecrest asserts that they validated the debt on multiple occasions. However, they failed to provide any documents proving their assignment to the contract or legal standing to collect. 4. Violation of Legal Rights and Unlawful Repossession • Claim: Bridgecrest's repossession on August 14, 2024, is alleged to be illegal, as Bridgecrest lacks authorization under the contract. The repossession violated the Truth in Lending Act (TILA), Uniform Commercial Code (UCC), Fair Debt Collection Practices Act (FDCPA), and involved alleged fraud and conversion. • Evidence of Misconduct: After the repossession, Bridgecrest allegedly sold the complainant's personal and LLC property that was in the vehicle, exacerbating the alleged violations. • Response from Bridgecrest: In correspondence with the complainant, Bridgecrest referred to an arbitration agreement and suggested legal proceedings if the complainant pursued court action. They did not directly address the TILA, UCC, FDCPA, or conversion claims. 5. Response Delays and Failure to Address Core Issues • Claim: Bridgecrest's responses to the CFPB and complainant were delayed, and none adequately addressed the core complaint of unauthorized assignment or the specific discrepancies in account history. • Further Allegations: Despite these delays, Bridgecrest proceeded with additional unauthorized actions, including the sale of the vehicle and its contents. • Response from Bridgecrest: Correspondence from Bridgecrest representatives Eva G. and Michael Gonzales confirmed the repossession and reiterated Bridgecrest's servicing role, without substantiating their legal right or addressing the request to return the vehicle or compensate



for losses incurred. Complainant's Follow-up Demand In the follow-up complaint submitted to the CFPB on October 24, 2024, the complainant reiterated their demands for: • Immediate Return of Vehicle: Due to the unauthorized repossession. •

☑ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

## What would be a fair resolution to this issue?

Compensation for Damages: • Lost Wages and Business Opportunities: $50,000 • Loss of Personal and LLC Property: $20,000 • Pain and Suffering: $50,000 • Total for Immediate Damages: $120,000 • Monthly Compensation: $5,000 per month for five years, totaling $300,000, as compensation for long-term damages caused by the wrongful repossession and harm to the complainant's creditworthiness. • Overpayments with Interest: Calculation based on monthly payments of $453.95 for 19 months. • Total Overpayments: $453.95 x 19 = $8,625.05 • Grand Total Demand: Adding immediate damages ($120,000), long-term monthly compensation ($300,000), and overpayments ($8,625.05), the grand total demand is $428,625.05. 8% Settlement Deduction Offer The complainant has expressed a willingness to accept an 8% deduction from the total demand as a settlement offer. Calculating 8% of $428,625.05 yields a deduction of $34,290. Therefore, the adjusted settlement amount is $394,335.05. Conclusion The complainant asserts that Bridgecrest's lack of assignment to the contract voids their actions in servicing, collecting, and repossessing the vehicle. The unauthorized repossession, alleged account manipulation, and sale of personal property constitute multiple legal violations. The complainant seeks the intervention of the CFPB for a comprehensive resolution, including compensation for financial and emotional damages, or the acceptance of the 8% deduction in settlement to avoid prolonged proceedings. Respectfully submitted Robert Charles Smith II

**16 attachments**

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

IMG_6654.jpeg (2.2 MB)

IMG_6655.jpeg (1.8 MB)

IMG_6640.jpeg (2.2 MB)

IMG_6644.jpeg (1.6 MB)

IMG_6647.jpeg (3 MB)

IMG_6646.jpeg (953 KB)

IMG_6652.jpeg (2.1 MB)

IMG_6653.jpeg (2 MB)

IMG_6643.jpeg (1.5 MB)

IMG_6649.jpeg (2 MB)

IMG_6642.jpeg (2.4 MB)

IMG_6648.jpeg (2.8 MB)

IMG_6650.jpeg (1.2 MB)

IMG_6651.jpeg (741.9 KB)

IMG_6645.jpeg (1.8 MB)

IMG_6641.jpeg (2.7 MB)

What company is this complaint about?

**COMPANY INFORMATION**
BRIDGECREST CREDIT COMPANY, LLC

**ACCOUNT NUMBER**

············        👁

## What people are involved?

**YOUR CONTACT INFORMATION**
Robert Smith

bosseriffic@gmail.com
7027505310

2525 W Washington Apt 233 Las Vegas, Nevada 89106 United
States

**YOUR PREFERRED LANGUAGE**
English

**YOUR DEMOGRAPHIC INFORMATION**
**AGE**
37
**SEX**
Male
**HISPANIC, LATINO, OR SPANISH ORIGIN**
No
**RACE**
Human Black American
**HOUSEHOLD SIZE INCLUDING TOTAL NUMBER OF
ADULTS AND CHILDREN**
4
**COMBINED ANNUAL HOUSEHOLD INCOME**
$35,000 - $49,999

✓ Sent to company

**STATUS**
Sent to company on
11/15/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in
progress and provide a final response in 60 days.

✓ Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 11/29/2024 | Closed with explanation |

12/4/24, 11:54 AM                                Complaint Detail                          C - 2 δ

Company's Response

November 29, 2024 Consumer Financial Protection Bureau Re: Complaint # 241024-16639918,
241114-16956455, 241115-16983608 To Whom It May Concern: Thank you for bringing this matter
to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate
the opportunity to address Mr. Robert Smith's concerns. We have confirmed that we have followed all
policies and procedures in the allocation of the payments and the recovery assignment of the
vehicle. Please see the following for details.

**ATTACHMENTS**

ALLY BC CFPB
RESPONSE.pdf
(220.5 KB)

● Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 11/29/2024 | 1/28/2025 |

Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when
the company responded to share your feedback. The CFPB will share your feedback responses with the company
and use the information to help the CFPB's work with consumer complaints.

Submit your feedback

✖ Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

C - 21

# Bridgecrest

November 29, 2024

Consumer Financial Protection Bureau

Re: Complaint # 241024-16639918, 241114-16956455, 241115-16983608

To Whom It May Concern:

Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Robert Smith's concerns. We have confirmed that we have followed all policies and procedures in the allocation of the payments and the recovery assignment of the vehicle. Please see the following for details.

On August 7, 2022, Mr. Smith entered a Retail Installment Contract (Contract), when he purchased a 2010 Mercedes-Benz E-Class from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Smith agreed to remit monthly payments of $447.00 beginning September 7, 2022. Mr. Smith also agreed to finance $16,441.16 at a 25.3% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. At the time of signing, Mr. Smith was provided with the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Smith asserted he had read and fully understood the terms enclosed. On page six of the Contract, it states: *"Seller may transfer this Contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The seller may assign this contract electronically."*.

When an account is past due, Bridgecrest attempts to contact our customers to assist in bringing the account current. We offer clear and upfront information in our communication by sending email and text notifications to our customers who may be facing delinquent credit reporting or other identified impacts such as vehicle recovery. We can confirm we made multiple attempts to notify Mr. Smith regarding the status of his account and recovery assignment. On May 8, 2024, at 31 days past due, we sent Mr. Smith a Right to Cure and Intent to Repossess letter to the address on file. This letter is automatically generated per each state's specific guidelines and is sent when an account reaches a specific number of days past due. We can confirm that sufficient payment was not received to cure the default, and the account continued to fall further delinquent.

On July 26, 2024, at 110 days past due, the vehicle was assigned for recovery due to nonpayment. On August 14, 2024, the vehicle was recovered, and we sent Mr. Smith a Notice of Disposition and Our Plan to Sell Property (NOI) letter to the address on file, outlining the options to reinstate or redeem the account or the vehicle would be sold at auction. On the same day, we spoke with Mr. Smith regarding the redemption process. He expressed no interest in redeeming the vehicle.

On August 20, 2024, we received a letter from Mr. Smith regarding similar concerns outlined in his complaint. At that time, we sent him a validation of debt letter, along with copies of his Retail Purchase Agreement, Contract, Credit Reporting Notice, and the account's transaction history report.

1

C-22

# Bridgecrest™

On August 30, 2024, at 145 days past due and with no payment remitted toward reinstatement, the account moved into a charge-off status and was subsequently reported as such to the three major CRAs.

On September 13, 2024, we spoke with Mr. Smith regarding his previous complaint #240824-15753309, regarding similar concerns as in his current complaints. At that time, we explained and attempted to clarify the information outlined in the transaction history report he was provided. We further advised his account balance was valid as the account balance has not been satisfied in full. Mr. Smith expressed dissatisfaction with the information provided, however, our call ended amicably.

Upon receipt of Mr. Smith's complaint, we spoke with Mr. Smith on October 30, 2024, and discussed his concerns. We explained the abovementioned information and that he had the opportunity to obtain his belongings from the vehicle after it was recovered. The call ended amicably. Upon completing our review of Mr. Smith's account, we confirmed that all payments have been allocated accurately to the account and that he is responsible for the remaining balance on his account. We are unable to accommodate Mr. Smith's request to provide any compensation or release the vehicle as the remittance of the remaining reinstatement amount was not satisfied.

Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Smith have any additional questions, please contact our Customer Relations department at 800-967-8854.

Thank you,

Eva G.
Agency Specialist